[No. 38344. Department Two. October 13, 1966.]

EVANELLE RISLEY, *Respondent*, v. JOHN MOBERG *et al.*, *Appellants.**

*Reported in 419 P.2d 151.

*Ray L. Greenwood,* for appellants.

*John R. Lewis,* for respondent.

LANGENBACH, J.†—This is an action for injuries alleged to have been sustained in an intersection automobile collision. The plaintiff's automobile sustained damages to its left rear fender in the amount of $65. Defendants appealed from an adverse jury verdict and judgment.

At the close of respondent's case-in-chief, her counsel excused her main witness, an orthopedist who had treated her. He was about to rest her case, when the following occurred—to which error is assigned:

[Respondent's counsel]: I have no further questions and ask that this doctor be excused. THE COURT: I would just inquire doctor.

#### EXAMINATION BY COURT

Q. In your best professional opinion, are you able to express an opinion rather, with reasonable medical certainty and circumstance of the treatments accorded this lady and her complaints to you, as to the approximate cause of the injuries? A. Yes. Q. What is your opinion? A. It would be my opinion that the injury she sustained was the proximate cause of the complaints which she had at the time I examined her. Q. What in your opinion with reasonable medical certainty is the cause of the injury in view of the facts as you know them? A. Say that again. Q. What in your opinion is the cause of the injuries that you observed in view of the facts as they have been related to you by the patient? A. It would be my opinion that the injuries resulted from the automobile accident [January 24, 1964] she described to me in January.

In prior cross-examination, the following colloquy occurred:

A. [By doctor] . . . . We would inquire with regard to the area involved, as to whether she had complaints

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

of long standing duration or previous complaints. Q. Did you ask Mrs. Risley [respondent] if she had any previous complaints? A. Yes. Q. Do you recall what her answer was? A. I noted at the time of my examination that she had no previous difficulty with the involved area prior to the time that she was injured. . . . Q. If she had been under treatment prior to the date of the accident, would that have influenced your opinion [from your examination] one way or another? A. Yes.

Appellants established that respondent had been treated by a chiropractor from October 1 to December 7, 1962, and January 22 until March 28, 1963, for neck and back injuries as well as other complaints.[1] She had a cervical affliction in the neck at the first seven cervical vertebrae in her spine. About February 19, 1963, an industrial insurance claim had been filed with the state. This information was not given to the orthopedist who testified for respondent.

Another medical doctor testified for appellants. In his opinion, the respondent's present condition was the result of a degenerative disease of the cervical spine and this was not related to the accident trauma. A majority of patients with neck strain get over it within 3 to 6 months.

It thus becomes apparent that the trial judge's questioning of respondent's doctor was an essential and vital part of her case. In these questions, the court assumed the existence of these injuries and her condition as a result of the accident in question.

Appellants made timely motions that the court's questions and the doctor's answers be striken from the record and for a new trial. In the trial judge's memorandum opinion denying the motion for a new trial, he said the following:

It is true, as defendants contend, that the questions as posed assumed as a fact that plaintiff had suffered injuries as a result of the collision. There is no shred of evidence in this file upon which any finding of fact could be based negating that assumption, other than the argu-

[1]Respondent made the following visits in 1962, October 1, 2, 3, 9, 10, 15, 17, 25; November 1, 26, 28; December 3, 7; and in 1963, January 22; February 19, 21, 25, 28; March 6, 8, 14, 17, 19, 21, 25, 27 and 28.

ment of defense counsel. Reasonable minds could hardly disagree upon this point. . . .

Further, it is my conviction that such "assumptions of fact" as were contained in these questions must be read in light of the doctor's testimony. It is true that the Court could have cured any possible fault by including in its question the phrase, "cause of the injuries claimed by plaintiff" but in a full textual appraisal I am convinced that such condition or qualification was implicit if not spoken.

Assuming that the above analysis is false or does not properly define the impact of the Court's questions I am satisfied that Instruction Number 3 given to the jury, specifically directing them to "wholly disregard such intimation of opinion, as the same if made were inadvertent and unintentional," and further, in Instruction Number 2, the jury was admonished that they were the exclusive judges of the facts and the weight to be given to the testimony and the Court must refrain from commenting on the evidence, negated any temptation the jury might have had to go astray.

. . . . I have no doubt that the *answer* given by the witness . . . [orthopedist] substantially affected the jurors conclusions as that answer established an essential element of plaintiff's case.

■ The law in this state clearly prohibits the trial judge from commenting upon the evidence. Const. art. 4, § 16 provided: "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law."

In speaking of this constitutional prohibition, *Heitfeld v. Benevolent & Protective Order of Keglers*, 36 Wn.2d 685, 699, 220 P.2d 655, 18 A.L.R.2d 983 (1950), said the following:

The object of this constitutional provision is to prevent the jury from being influenced by knowledge conveyed to it by the court as to the court's opinion of the evidence submitted. The jury is the sole judge of the credibility and weight of the evidence, and courts should be extremely careful of any comments made in the presence of the jury, because such comments may have great influence upon the final determination of the issues.

The *Heitfeld* court, then, reviewed all the Washington cases holding either the trial judge's comments violated or did not violate the constitutional prohibition. In reconciling these cases, the *Heitfeld* court said, at 706:

> The trend in this state appears to be that remarks addressed entirely to attorneys, in ruling upon questions presented during the progress of the trial, are not comments on the evidence prohibited by the constitution. We do not wish to recede from our earlier decisions holding that it is reversible error for the court to make any comment during the course of the trial which will influence the jurors. But each case must be determined on its own peculiar facts and circumstances.

In *Heitfeld*, during a colloquy with counsel concerning the admissibility of evidence, the trial judge (in the presence of the jury) made the comment that the plaintiff had already proven an element of his case. This court holding that this was not commenting on the evidence said, at 706:

> We do not approve the statements made by the trial court in this case. Lifted out of the record, they appear to be a violation of the constitutional prohibition. But placed in their proper perspective as a very small portion of the record of a trial which lasted more than three weeks, coupled with the myriad of checks and deposit slips which had been introduced as exhibits, and realizing that the remarks were addressed to counsel in ruling on the admission of evidence, and not to the jury, we cannot say that such comments were prejudicial.

What was stated in *State v. Jackson*, 83 Wash. 514, 523, 145 Pac. 470 (1915), is equally applicable and cogent here:

> Every lawyer who has ever tried a case, and every judge who has ever presided at a trial, knows that jurors are inclined to regard the lawyers engaged in the trial as partisans, and are quick to attend an interruption by the judge, to which they may attach an importance and a meaning in no way intended. It is the working of human nature of which all men who have had any experience in the trial of cases may take notice. Between the contrary winds of advocacy, a juror would not be a man if he did not, in some of the distractions of mind which attend a hard fought and doubtful case, grasp the words and

manner of the judge as a guide to lead him out of his perplexity. On the other hand, a presiding judge has no way to measure the effect of his interruption. The very fact that he takes a witness away from the attorney for examination may, in the tense atmosphere of the trial, lead to great prejudice.

In the case at bar, looking at the questions in the context of this relatively short trial,[2] the judge's questions appear of great magnitude and importance. The questions assumed the crux of respondent's case—a factual issue for the jury, *viz*, whether she had sustained injuries as a result of this accident. Appellants always contended that respondent did not receive any injuries from the accident. The judge, by assuming this fact, appeared personally to corroborate and seemingly to indorse the credibility of respondent and her doctor. The judge frankly admitted this had a material and substantial influence upon the jury. The effect was prejudicial to appellants. Consequently, the judgment based upon the verdict must be set aside. Appellants are granted a new trial; the costs will abide its outcome. It is so ordered.

ROSELLINI, C. J., DONWORTH and WEAVER, JJ., concur.

FINLEY, J., concurs in the result.

[2]Respondent's case was three witnesses: appellant-husband, herself and the orthopedist.