[No. 45812. En Banc. February 14, 1980.]

A. E. EGEDE–NISSEN, *Petitioner, v.* CRYSTAL
MOUNTAIN, INC., *Respondent.*

128

*Benson, Chadwick, Stege & Wines,* by *Kirk R. Wines,* for petitioner.

*Burgeson, Grenier & Associates,* by *Robert J. Grenier,* for respondent.

*Daniel F. Sullivan, Dean Bender, Ronald Bland,* and *Donovan Flora* on behalf of Washington State Trial Lawyers Association, amici curiae.

HICKS, J.—This is an action for personal injuries sustained by petitioner A. E. Egede–Nissen, a Norwegian national, when she fell from a chairlift at Crystal Mountain ski area. A Pierce County Superior Court jury found Crystal Mountain, Inc., negligent, assessed total damages of $150,000, and found Egede–Nissen "contributorially negligent" to the extent of 55 percent. Crystal Mountain appealed and the Court of Appeals, Division Two, reversed and remanded for a new trial. *Egede–Nissen v. Crystal Mountain, Inc.,* 21 Wn. App. 130, 584 P.2d 432 (1978). We agree with the Court of Appeals, although we base our conclusion on somewhat different grounds.

The facts are set forth in considerable detail in the opinion of the Court of Appeals. Crystal Mountain, Inc., operates recreational ski facilities on public–owned land open to the public for recreational purposes. April 25, 1973, plaintiff Egede–Nissen, a stewardess, and several members of her Scandinavian Airlines System (SAS) flight crew traveled to Crystal Mountain to picnic and sightsee. The ski lodge and chairlifts were not open for business, although the C–4 chairlift was running as an accommodation for three employees of a ski manufacturing company. No lift attendants were present.

From the loading area of the C–4 lift, the SAS group noted two or three skiers on the slopes above. Captain Hartvedt decided to ride the lift up to the skiers and look for and inquire about a picnic site. He boarded a moving chair and Egede–Nissen impulsively decided to accompany him. In her haste to board, she slipped and landed in a precarious position facing and grasping the chair with her lower torso and legs dangling below. Captain Hartvedt, occupying the same chair, attempted to stabilize her without himself falling from the chair.

Crystal Mountain employees working in the C–1 lift area had observed the foregoing situation develop and two of them immediately hastened to the C–4 lift, intending to assist Egede–Nissen. In the course of their efforts, one of the employees stopped the lift, restarted it and then stopped it a second time. The chairs on the lift swayed markedly at each stop. Following the second stop, Egede–Nissen's hold on the chair became insecure and she fell 30 feet to the ground, sustaining injuries.

Petitioner commenced this negligence action against Crystal Mountain in Pierce County Superior Court in June 1973. The case was not tried until November 1976, at which time it was vigorously, often heatedly, contested. A verdict was returned in favor of the plaintiff in the amount of $67,500.

A major legal question at trial was Egede–Nissen's status (invitee, licensee or trespasser) aboard the chairlift. Her status depended upon a factual determination whether Crystal Mountain had given adequate notice, by signs or barricades, that the C–4 lift was not in public operation. On that issue, the evidence was sharply in conflict.

The trial court gave several instructions addressing the status of Egede–Nissen aboard the chairlift, to which Crystal Mountain objected. Instructions on this issue proposed by Crystal Mountain were refused by the court. In addition to objecting to instructions given and refused and certain evidentiary rulings, Crystal Mountain charged misconduct on the part of the trial judge.

On review, the Court of Appeals declared the trial court's instruction No. 20 to be erroneous. Instruction No. 18 was also declared to be defective. The court then selected from among Crystal Mountain's numerous assignments of error and addressed "major issues in order to avoid possible error at the new trial." *Egede–Nissen,* at 137. The Court of Appeals did not address the allegation of trial court misconduct.

We granted Egede–Nissen's petition for discretionary review to consider, *inter alia,* whether we should abandon

the traditional common–law categories of entrants upon land and adopt a unified standard of reasonable care under the circumstances.[1]

Petitioner Egede–Nissen and amicus curiae urge this court to discard the categorical approach to landowner liability. Although we have questioned the common–law classification scheme in the past,[2] we are not ready at this time to totally abandon the traditional categories and adopt a unified standard. In the trial court, petitioner's proposed instructions did not incorporate the rule of "reasonable care under all circumstances" for which she contends on appeal.[3] Abandonment of the common–law classification system was not urged in the course of the trial. *See Memel v. Reimer,* 85 Wn.2d 685, 687, 538 P.2d 517 (1975). Petitioner's proffered instructions were couched in terms of determining whether she was a business invitee or a trespasser.

Further, this court in the past has looked to the Restatement (Second) of Torts (1965) for guidance in reviewing

[1]Several states, following the lead of the California Supreme Court in *Rowland v. Christian,* 69 Cal. 2d 108, 443 P.2d 561, 70 Cal. Rptr. 97 (1968), have abandoned the classification analysis and replaced it with a general standard of reasonable care under the circumstances. *See, e.g., Webb v. Sitka,* 561 P.2d 731 (Alaska 1977); *Mile High Fence Co. v. Radovich,* 175 Colo. 537, 489 P.2d 308 (1971); *Pickard v. Honolulu,* 51 Haw. 134, 452 P.2d 445 (1969); *Cates v. Beauregard Elec. Coop., Inc.,* 328 So. 2d 367 (La. 1976); *Ouellette v. Blanchard,* 116 N.H. 552, 364 A.2d 631 (1976); *Basso v. Miller,* 40 N.Y.2d 233, 352 N.E.2d 868, 386 N.Y.S.2d 564 (1976); *Mariorenzi v. Joseph DiPonte, Inc.,* 114 R.I. 294, 333 A.2d 127 (1975).

[2]*See, e.g., Ward v. Thompson,* 57 Wn.2d 655, 660. 359 P.2d 143 (1961) ("time worn distinctions"); *Mills v. Orcas Power & Light Co.,* 56 Wn.2d 807, 820, 355 P.2d 781 (1960) ("ancient categories").

[3]Plaintiff did propose instructions imposing common carrier status upon Crystal Mountain, as the operator of a ski lift facility ("highest degree of care"). *See Summit County Dev. Corp. v. Bagnoli,* 166 Colo. 27, 441 P.2d 658 (1968). The trial court's instructions did not incorporate this theory and Crystal Mountain's status as a common carrier has not been raised or argued on appeal. We note the enactment of RCW 70.117 in 1977 following trial in the instant case. *See especially* RCW 70.117.020(9). We do not reach the applicability of the statute in the instant case.

problems of landowner liability. *See, e.g., Memel v. Reimer, supra* (adoption of section 342 regarding duty owed licensees); *McKinnon v. Washington Fed. Sav. & Loan Ass'n,* 68 Wn.2d 644, 414 P.2d 773 (1966) (adoption of section 332 defining invitees). *See also Miniken v. Carr,* 71 Wn.2d 325, 328–29, 428 P.2d 716 (1967) (cited section 342 with approval); *Potts v. Amis,* 62 Wn.2d 777, 784, 384 P.2d 825 (1963) (reliance on section 341). The Restatement continues to distinguish between invitees and licensees. *See* sections 332, 342. In addition to the duty owed to licensees, landowners owe invitees an affirmative duty to discover dangerous conditions. *See* section 343, comment *b.* Under the circumstances of this case, we decline to depart from our adherence to the current common–law scheme.

█ As noted above, a major legal issue at trial was petitioner's status aboard the chairlift, which in turn determined the corresponding duty of care owed by Crystal Mountain. There is no serious dispute that under *McKinnon,* Egede–Nissen's status upon *entering* the Crystal Mountain area was that of a public invitee. *See* section 332. Accordingly, as to her, Crystal Mountain's duty was to maintain its premises in a reasonably safe condition. This duty, however, extends only to the "area of invitation"— that portion of the premises arranged so as to lead an invitee to reasonably believe it is open to her. Section 332, comment *1.*

Petitioner's status aboard the chairlift turned on the resolution of a factual dispute—whether Crystal Mountain had given adequate notice that the C–4 lift was closed to the public. Initially, Egede–Nissen's status was that of a public invitee, which status she would retain until adequately warned of limits to the area of her invitation. *Miniken v. Carr, supra; Mesa v. Spokane World Exposition,* 18 Wn. App. 609, 570 P.2d 157 (1977). If, however, petitioner unreasonably strayed beyond the area of invitation, her status would change from that of invitee to a

licensee or trespasser, with a corresponding change in the duty owed to her by Crystal Mountain.[4]

The trial court gave a number of instructions addressing the standard of care owed petitioner, to which Crystal Mountain objected. The exceptions presented to the court were rambling and imprecise. While it is rather clear that Crystal Mountain desired to classify petitioner as a licensee or a trespasser, at no point, however, in its exceptions or proposed instructions did Crystal Mountain advise the trial court precisely and correctly how that alternative should be presented to the jury under the circumstances of this case.

The Court of Appeals held the trial court erred in giving instruction No. 20,[5] because it "permitted the jury to find Crystal Mountain guilty of negligence simply for failing to make a reasonable effort to exclude the public from the lift area". *Egede–Nissen,* at 136–37. We agree. Further, we agree with the court's analysis of instruction No. 20, though we see no disharmony between its analysis and *Mesa v. Spokane World Exposition, supra.*[6] We do not agree, however, that the exception to the instruction taken by Crystal

---

[4]It should be noted that the Court of Appeals erroneously stated that the duty imposed upon a landowner, vis–a–vis a trespasser *or licensee,* was merely to refrain from willful and wanton misconduct. *Egede–Nissen,* at 136. In *Memel v. Reimer, supra,* this court adopted Restatement (Second) of Torts § 342 as the standard of care owed licensees and abandoned the wanton misconduct standard.

[5]Instruction No. 20 reads:

"If an owner or occupier of land which is open to the general public wishes to exclude the general public from any particular portion of such land, or from any instrumentality maintained on such land, he must use reasonable care to do so. *The failure to use reasonable care is negligence.* Such negligence has the same effect as any other act of negligence. Therefore, it will not render a defendant liable for damages unless you further find that it was a proximate cause of the claimed injury or damage." (Italics ours.)

[6]In *Mesa v. Spokane World Exposition, supra,* the trial court granted summary judgment to defendant landowners, finding plaintiff to be a trespasser as a matter of law. The issue before the Court of Appeals was whether there existed a genuine issue of material fact as to plaintiff's status and thus the corresponding duties of care owed by the various defendants. *Mesa* at 612. The Court of Appeals reversed the trial court holding that the scope of an invitation is a factual matter. We do not construe the opinion as holding that failure to exclude plaintiff from an

Mountain was sufficient to advise the trial court of the defects discussed by the Court of Appeals.

Flawed instructions to which inadequate exceptions are taken will not be considered on appeal and, thus, cannot be the basis upon which to grant a new trial. *Bitzan v. Parisi,* 88 Wn.2d 116, 125, 558 P.2d 775 (1977). We recently stated in *Estate of Ryder v. Kelly–Springfield Tire Co.,* 91 Wn.2d 111, 114, 587 P.2d 160 (1978):

> The cognizance we take on appeal of alleged erroneous instruction in the trial court depends upon the action appellant took in that court. The trial court must have been sufficiently apprised of any alleged error to have been afforded an opportunity to correct the matter if that was necessary. CR 51(f). In *Nelson v. Mueller,* 85 Wn.2d 234, 238, 533 P.2d 383 (1975), we quoted from *Roumel v. Fude,* 62 Wn.2d 397 [399–400], 383 P.2d 283 (1963), as follows:
>
>> Our rules require that exceptions to instructions shall specify the paragraphs or particular parts of the charge excepted to and shall be sufficiently specific to apprise the trial judge of the *points of law* or question of fact in dispute. The purpose is *to enable the trial court to correct any mistakes in the instructions in time to prevent the unnecessary expense of a second trial.*

Crystal Mountain did not take exceptions to instruction No. 20 on the ground that it "confuses the questions of the scope of the invitation and the existence of a breach of the applicable duty." *Egede–Nissen v. Crystal Mountain, Inc.,* 21 Wn. App. 130, 135, 584 P.2d 432 (1978). Crystal Mountain objected that the instruction failed to label plaintiff as a trespasser. It did not apprise the trial court of the defect in instruction No. 20 as found and discussed by the Court of Appeals. Therefore, under our rule the error in instruction No. 20 cannot serve as the basis for a new trial.

---

area intended to be private could, in and of itself, constitute a breach of the duty of reasonable care. *But see Egede–Nissen v. Crystal Mountain, Inc., supra* at 135.

■ We recognize that a party is entitled to have the trial court instruct on its theory of the case if there is substantial evidence to support it. This rule applies regardless of the inconsistency of the theories of the parties. *Allen v. Hart,* 32 Wn.2d 173, 176, 201 P.2d 145 (1948); *Heinz v. Blagen Timber Co.,* 71 Wn.2d 728, 732, 431 P.2d 173 (1967). A proponent, however, must provide the court with appropriate forms of instructions correctly stating the law supporting the theory he advocates. CR 51; *McGarvey v. Seattle,* 62 Wn.2d 524, 533, 384 P.2d 127 (1963).

In the instant case, it was Crystal Mountain's theory that Egede–Nissen was at best a licensee and more properly a trespasser aboard the C–4 lift, to whom it owed a duty only to refrain from willful or wanton misconduct. While there was substantial evidence to support the trespasser theory, as pointed out by the Court of Appeals at page 137, the trial court correctly refused Crystal Mountain's proffered instructions because they assumed Egede–Nissen to be a trespasser as a matter of law. Such an assumption was erroneous in light of the posture of the case at the close of presentation of all the evidence, and the court properly refused the proposed instructions. As previously noted, her status was dependent upon factual resolution.

The Court of Appeals also found instruction No. 18[7] to be erroneous because it assumed petitioner to be an invitee as a matter of law. While the exception taken was far from a model of clarity in precisely pointing out the "'*points of law* or question of fact in dispute'" (*Ryder,* at 114), Crystal Mountain's counsel did state, *inter alia,* "she had no right

---

[7]Instruction No. 18 reads:

"The owner and operators of a recreational transportation device, such as a chairlift, must use that degree of care which a reasonably prudent owner and operator would exercise under similar conditions or circumstances. In considering the care to be used, you must take into account the dangers, if any, to be encountered in the normal use of the device and in such uses as the owner and operators should have expected the device to have been put in the exercise of reasonable care. Failure to use such reasonable care is negligence."

to be on the lift. There is no proof sufficient to cast her again in this category of an invitee."

Egede–Nissen's status aboard the lift was dependent upon the scope of the invitation extended to her by Crystal Mountain. *Mesa v. Spokane World Exposition, supra.* The scope of the invitation was a contested matter to be resolved by the jury. As pointed out by the Court of Appeals at pages 137–38, the trial court erred in giving instruction No. 18, which assumed that Egede–Nissen had the status of an "invitee". The resolution of that question was dependent upon facts to be found by the jury. We hold that the trial court was sufficiently apprised of the defect in instruction No. 18 and that the giving of the instruction constituted reversible error for which a new trial is required.

The Court of Appeals addressed certain remaining issues to guide the trial court on remand. For this reason, we examine below those issues with which we differ.

Crystal Mountain objected to the trial court's refusal to give its proposed instruction on "sudden emergency." The Court of Appeals agreed and held that the instruction should have been given. Under the circumstances of this case, we differ with the Court of Appeals and agree with the trial court.

█ Defendant's proposed emergency doctrine instruction is patterned after WPI 12.02. The comment thereto in 6 Wash. Prac. 82 (1967) states in part:

> The emergency rule is merely a special application of the general standard of reasonable care. When given, the jury must consider the fact of emergency as a circumstance in determining the reasonableness of a person's reaction thereto.

*See also Sandberg v. Spoelstra,* 46 Wn.2d 776, 285 P.2d 564 (1955). The doctrine cannot be invoked by one whose own conduct brought about, in whole or in part, the emergency with which he is confronted. *See Tobias v. Rainwater,* 71 Wn.2d 845, 431 P.2d 156 (1967).

Crystal Mountain employees watched the situation develop from the time the SAS group arrived at the C–4 loading area. No employee was in a position of peril from which he had to take instant or instinctive action. Both of the employees, who first endeavored to come to plaintiff's assistance, had been trained in lift evacuation. Undoubtedly when these employees observed Egede–Nissen's position after her faulty effort to board the chair, the situation became urgent to them, but not a sudden emergency in the sense of *Tobias* and the cases discussed therein. The only evidence cited in support of a sudden emergency instruction is the ambiguous testimony of Captain Hartvedt that Crystal Mountain employees, noticing plaintiff hanging from the lift, would have cause for alarm. We conclude, therefore, that the trial court did not err in refusing to give Crystal Mountain's proposed emergency instruction.

Regarding the trial court's evidentiary rulings challenged by Crystal Mountain, we express some reservations about the Court of Appeals analysis. Crystal Mountain contended that the trial court erred in allowing plaintiff to testify regarding (1) the causal relation between her injuries and back problems during a subsequent pregnancy; and (2) her inability to return to her former employment. The testimony was presented in the context of establishing damages. The Court of Appeals held plaintiff's response to the first inquiry was excludable as opinion evidence and the response to the second was excludable as hearsay.

In direct examination, plaintiff was asked if, during pregnancy, she had problems resulting from the ski lift accident. Arguably, the challenged question called for a medical conclusion by a lay witness. Plaintiff should not be foreclosed, however, from comparing the pregnancy and birth of her first child, prior to the accident, with the pregnancy and birth of her second child, subsequent thereto. Under properly formulated questions, plaintiff is qualified to explain differences in pain or discomfort in the two births.

The trial court has discretion in ruling on objections based on the opinion rule, subject to review for abuse of discretion. *Halbach v. Luckenbach S.S. Co.*, 152 Wash. 492, 278 P. 178 (1929). We find no abuse of discretion. In addition, plaintiff's testimony on the subjective aspects of any persisting disability were admissible on the issue of future damages and sufficient to support an instruction on such. *Bitzan v. Parisi, supra.* Regarding the hearsay objection, assuming the question elicited a hearsay response,[8] we find no prejudice to the defendant.

Finally, Crystal Mountain asserts prejudicial interjection on the part of the trial court throughout the almost 2-week trial. This issue was raised in the trial court, the Court of Appeals, and again in this court. Such a charge should not be lightly made nor, when made, should it be slighted by a reviewing court.

At the inception of the trial, the judge granted Crystal Mountain's motion to exclude witnesses from the courtroom. Differences which arose during trial may be attributed in large measure to varying interpretations placed upon the scope of this order. In the course of the trial, the court occasionally admonished Crystal Mountain's attorney regarding the scope of his discussions with excluded witnesses before they testified. Crystal Mountain objected that restraints imposed by the court were unduly restrictive. After more than 7 days of trial, Crystal Mountain moved for mistrial on the ground, *inter alia,* that adequate presentation of the defense was prevented by the trial court's interpretation and enforcement of its order excluding witnesses. The motion was denied.

The trial court has discretion to exclude witnesses from the courtroom. *See* 2 L. Orland, Wash. Prac. § 227 (1967); ER 615. We agree with the Court of Appeals that a more precise and detailed pretrial order could have substantially

---

[8]In direct examination, plaintiff responded negatively to the following inquiry: "After the physical examination [by employer SAS] were you *allowed* to return to your work with SAS?" (Italics ours.)

alleviated subsequent tensions and misunderstandings. We are not suggesting that a trial court may *never* circumscribe counsel in discussing previous testimony with excluded witnesses. We do believe, however, the limitations imposed in the instant case were unnecessarily restrictive. This mistake was compounded by the court's instruction No. 4.[9]

■ The parties do not dispute the propriety of an attorney discussing testimony with witnesses before trial. To constitute a comment on the evidence within Const. art. 4, § 16, "the jury must be able to infer from what the court said or did not say that he personally believed or disbelieved the testimony in question." *State v. Browder,* 61 Wn.2d 300, 302, 378 P.2d 295 (1963); *see also Spinelli v. Economy Stations, Inc.,* 71 Wn.2d 503, 509, 429 P.2d 240 (1967). The second paragraph of instruction No. 4 comes perilously close to violating the constitutional ban. In the context of the entire trial situation, the instruction may suggest judicial lack of confidence in integrity of defense witnesses.

Crystal Mountain also based its mistrial motion on the cumulative effect of trial court gestures and actions, allegedly indicating to the jury the court's displeasure or incredulity regarding certain defense witnesses. These instances assertedly consisted of facial expressions indicating disbelief; questioning the veracity of defense witnesses; and

---

[9]Instruction No. 4 states:

"Any party, his attorney or his representative has a right to interview a witness for the purpose of learning what testimony the witness will give. The fact that the witness has talked with any attorney, a party, or a party's representative, and told him what his testimony would be, does not, of itself, reflect adversely on the testimony of the witness.

"However, no party, attorney, or representative of a party has a right to suggest to a witness what his testimony should be. When witnesses have been excluded from the courtroom during the course of trial, as they have been in this case, if you find that a party, his attorney or his representative has informed a prospective witness what previous testimony in the case on a significant issue has been or has suggested to a witness what his testimony should be, you may take these matters into consideration along with any other matters that bear on believability or weight, in determining what weight should be given the testimony of the witness."

overly extensive trial court cross–examination of defense witnesses. On some occasions, the court allegedly usurped the questioning of witnesses, both when the jury was present and in its absence.

The court, of course, may question witnesses. However, the court's questions may not be phrased in a manner indicative of the court's attitude towards the merits of the cause, thus constituting an impermissible comment on the evidence. *Dennis v. McArthur,* 23 Wn.2d 33, 38, 158 P.2d 644 (1945); *Risley v. Moberg,* 69 Wn.2d 560, 419 P.2d 151 (1966), and cases cited and discussed. *See State v. Brown,* 31 Wn.2d 475, 197 P.2d 590 (1948), 202 P.2d 461 (1949); ER 614(b).

Out of the jury's presence, two defense witnesses were threatened by the trial judge with possible perjury prosecutions. In one instance the court ended its admonition to the witness with this statement:

And I would suggest also that if you violate this order, it is contemptuous. I will determine, after the conclusion of your testimony, what if anything the Court might do in reference to your testimony yesterday. If you testify truthfully today, I may do nothing.

We expect trial judges to maintain firm control in their courtrooms. We also expect their rulings to be fair and impartial. Our examination of the entire record of this approximately 2–week trial reveals firm control by the judge and impartiality in contested rulings. In those few rulings in which we believe the court erred, we find no indication that the error resulted from any partiality.

The record does reflect, however, the court's concern that the jury had been presented an orchestrated set of defense witnesses and the judge's conviction that he had observed some of the orchestrating occur. The court conducted its more rigorous interrogation of witnesses in response to this concern.

Lengthy affidavits from Crystal Mountain's counsel and also its vice president, who was present throughout the

trial, described trial court "body language" allegedly indicating disbelief during testimony of a number of Crystal Mountain witnesses. While the report of proceedings does not reflect contemporaneous objections to such conduct, concurrent objection is not required. *Seattle v. Harclaon,* 56 Wn.2d 596, 598, 354 P.2d 928 (1960), (Finley, J., concurring). Understandably, counsel may be reluctant to note such an objection, particularly in the presence of the jury, and may elect not to object at all if the incidents were only occasional and minor. If, however, the occurrences were as frequent and marked as Crystal Mountain contends, counsel should object to the court's conduct. Failure to object denies the trial court an opportunity to mitigate the effect of its conduct on the jury, when such conduct has been inadvertent. Manifest error affecting a constitutional right may, of course, be raised at any time. RAP 2.5(a)(3). Timeliness of objection is not an issue in this case because the trial court was sufficiently apprised of the matter in the motion for mistrial.

A trial judge should not enter into the "fray of combat" nor assume the role of counsel. *See generally* Notes, *Judicial Intervention in Trials,* Wash. U.L.Q. 843 (1973). An isolated instance of such conduct may be deemed harmless error, however, if it cannot be said to violate constitutional bounds of judicial comment. Const. art. 4, § 16. This is particularly true if the response appears invited and represents a natural, limited reaction to an immediate stimulus. In such instances, potential error may be cured by an instruction, if requested. *See generally Gestures or Facial Expressions of Trial Judge in Criminal Case, Indicating Approval or Disapproval, Belief or Disbelief, as Ground for Relief,* Annot., 49 A.L.R.3d 1186 (1973). On the other hand, the cumulative effect of repeated interjections by the court may constitute reversible error. In the instant case, we believe the trial court, perhaps inadvertently without meaning to do so, actively interceded in the trial more frequently and at greater length than the circumstances warranted.

We have reviewed the matter of court intervention at perhaps greater length than is necessary. Nonetheless, we believe that it occurs far more frequently than it reaches an appellate court. The relatively early case of *State v. Jackson*, 83 Wash. 514, 145 P. 470 (1915) discusses this problem and notes that it is a task of some difficulty to repeatedly intercede in the trial without indicating the train of thought of the court. In *Jackson* at pages 523–24, we said:

> Every lawyer who has ever tried a case, and every judge who has ever presided at a trial, knows that jurors are inclined to regard the lawyers engaged in the trial as partisans, and are quick to attend an interruption by the judge, to which they may attach an importance and a meaning in no way intended. It is the working of human nature of which all men who have had any experience in the trial of cases may take notice. Between the contrary winds of advocacy, a juror would not be a man if he did not, in some of the distractions of mind which attend a hard fought and doubtful case, grasp the words and manner of the judge as a guide to lead him out of his perplexity. On the other hand, a presiding judge has no way to measure the effect of his interruption. The very fact that he takes a witness away from the attorney for examination may, in the tense atmosphere of the trial, lead to great prejudice.

Quoted with approval in *Risley v. Moberg, supra.* We are confident that the problem will not recur at the new trial.

As modified herein, the Court of Appeals is affirmed.

UTTER, C.J., ROSELLINI, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, and WILLIAMS, JJ., and STEERE, J. Pro Tem., concur.