FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 MAY 15 AM 11: 24



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

MILTON LONG, individually, and as )
Personal Representative of the )
ESTATE OF DONALD RODENBECK, )
                                       )
               Respondent, )

v. )

PEACEHEALTH d/b/a PEACEHEALTH )
ST. JOSEPH MEDICAL CENTER, )
a Washington Non-Profit Corporation, )
                                        )
               Appellant. )
_____ )

DIVISION ONE

No. 74654-5-I

UNPUBLISHED OPINION

FILED: May 15, 2017

DWYER, J. — An utterance referencing a witness's prior testimony that does not reasonably convey an attitude or opinion is not a judicial comment on the evidence. The trial judge herein sought clarification of testimony previously given by an expert witness. In so doing, the trial judge first oriented the witness to the subject of the inquiry, then posed three clarifying questions, and concluded by remarking, "Okay." The trial resumed.

The predicate for the trial judge's utterances was prior testimony given by the witness. No reasonable juror could discern from the utterances the judge's attitude or opinion toward the testimony. There was no error. Accordingly, we reverse the order granting a new trial and remand for entry of judgment upon the jury's verdict.

I

Donald Rodenbeck underwent aortobifemoral bypass surgery at PeaceHealth to treat his significant atherosclerotic disease. After two days of observation in the hospital's intensive care unit, Rodenbeck's physician, Dr. Connie Zastrow, approved his transfer to a regular hospital unit in light of his stable vital signs and blood work. However, late in the evening of the transfer and after a nursing staff shift change, a nurse entered Rodenbeck's room and found him face up on the floor with a small to moderately sized pool of blood by his head. She yelled for help. Several nurses arrived soon thereafter. Rodenbeck had no pulse. An intravenous (IV) catheter that had been placed in his neck had become disconnected and was open. Resuscitation attempts were unsuccessful. Rodenbeck was pronounced dead.

Milton Long, the personal representative of Rodenbeck's estate, sued PeaceHealth for wrongful death and medical negligence. A 10-day trial resulted.

At trial, Long presented the testimony of Dr. Kenneth Coleman, a physician and attorney, who opined that Rodenbeck died from a combination of significant undiscovered internal bleeding and a sufficient amount of external blood loss to result in his death. Dr. Coleman testified that he relied on Rodenbeck's medical records in forming his opinions.

PeaceHealth presented the testimony of four expert witnesses, Doctors Zastrow, Gary Goldfogel, Terence Quigley, and Matthew Lacy. PeaceHealth's experts testified that they disagreed with Dr. Coleman's conclusion that Rodenbeck had died from external blood loss because the amount of blood

described by the eyewitnesses was insufficient to have caused Rodenbeck's death. The expert witnesses testified to relying on several sources of information provided by the eyewitnesses—personally speaking with the eyewitnesses, reviewing their deposition testimony, and reviewing Rodenbeck's medical chart notes. But the expert witnesses' testimony varied as to which sources of information in particular each witness relied on in forming the opinions expressed.

After counsel for PeaceHealth finished the direct examination of Dr. Quigley and while the jury was seated, Judge Deborra Garrett, the trial judge, indicated that she wanted to question Dr. Quigley. After confirming with Dr. Quigley that he had testified that the amount of external blood loss was "not extensive," the trial judge inquired into what his sources of information were for that proposition, including whether the sources were chart notes or deposition testimony. Verbatim Report of Proceedings (VRP) at 1639. During their brief exchange, Dr. Quigley indicated that he relied only on the eyewitnesses' deposition testimony. The trial judge then replied, "Okay." VRP at 1640. The trial resumed, with no objection interposed.[1]

The jury returned a special verdict on behalf of PeaceHealth, answering "Yes" to the question of whether PeaceHealth was negligent but answering "No" to the question of whether PeaceHealth's negligence was a proximate cause of Rodenbeck's death.

---

[1] Long did not object to the trial judge's line of questioning and, immediately after the judge said "Okay," counsel for PeaceHealth indicated that, in light of the judge's questioning, he had a few follow-up questions. VRP at 1640.

After the verdict, Long moved for a new trial, claiming, in his reply brief, that the trial judge had improperly commented on the evidence during her exchange with Dr. Quigley. At the hearing on the motion, Long urged the trial judge to recuse herself from determining whether she had commented on the evidence. The trial judge complied.

Whatcom County District Court Judge Matthew Elich was assigned to rule on the issue. After a hearing, and without the benefit of a complete trial transcript, the substitute judge granted Long's motion for a new trial.[2]

PeaceHealth now appeals.

## II

### A

We generally review an order granting a new trial for abuse of discretion. Alum. Co. of Am. v. Aetna Cas. & Sur. Co., 140 Wn.2d 517, 537, 998 P.2d 856 (2000). The abuse of discretion standard recognizes that deference is owed to the trial court because it is "'better positioned than [an appellate court] to decide the issue in question.'" Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 339, 858 P.2d 1054 (1993) (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 403, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990)). This follows from the "oft repeated observation that the trial judge who has seen and heard [the proceedings] is in a better position to evaluate and adjudge than can we from a cold, printed record." State v. Wilson, 71 Wn.2d 895, 899, 431

---

[2] The substitute judge did not have the benefit of reviewing a transcript of the entire trial because one had not yet been prepared. The only transcript made available to the substitute judge was for the day on which the trial judge allegedly commented on the evidence.

P.2d 221 (1967). Whether a trial judge's utterances constitute an improper comment is a constitutional question that we review de novo. CONST. art. IV, § 16; State v. Woods, 143 Wn.2d 561, 590-91, 23 P.3d 1046 (2001). In review of this case, we have these legal considerations in mind.

B

The Washington Constitution provides, "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." CONST. art. IV, § 16. This constitutional provision is violated when a judge's comments "imply to the jury an expression of the judge's opinion concerning disputed evidence, or express the court's attitude towards the merits of the cause." Hansen v. Wightman, 14 Wn. App. 78, 85, 538 P.2d 1238 (1975) (citing State v. Carothers, 84 Wn.2d 256, 267, 525 P.2d 731 (1974); State v. Jacobsen, 78 Wn.2d 491, 495, 477 P.2d 1 (1970); Risley v. Moberg, 69 Wn.2d 560, 565, 419 P.2d 151 (1966)), overruled on other grounds by Bowman v. Two, 104 Wn.2d 181, 186, 704 P.2d 140 (1985).

To rise to the level of an unconstitutional comment, the judge's opinion or attitude must be "reasonably inferable from the nature or manner of the questions asked and things said." Dennis v. McArthur, 23 Wn.2d 33, 38, 158 P.2d 644 (1945), overruled on other grounds by State v. Davis, 41 Wn.2d 535, 537, 250 P.2d 548 (1952).

C

There is nothing irregular about a trial judge asking questions of a witness. "The court, of course, may question witnesses." Egede-Nissen v. Crystal

Mountain, Inc., 93 Wn.2d 127, 140, 606 P.2d 1214 (1980). It is beyond dispute "[t]hat the court has wide discretionary powers in the trial of a cause and is not prohibited from questioning a witness." Dennis, 23 Wn.2d at 37-38. Indeed, the trial court may call its own witness. State v. Wixon, 30 Wn. App. 63, 77, 631 P.2d 1033 (1981). Our rules of evidence recognize this judicial authority.

## CALLING AND INTERROGATION OF WITNESSES BY COURT

(a) **Calling by Court.** The court may, on its own motion where necessary in the interests of justice or on motion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called.

(b) **Interrogation by Court.** The court may interrogate witnesses, whether called by itself or by a party; provided, however, that in trials before a jury, the court's questioning must be cautiously guarded so as not to constitute a comment on the evidence.

(c) **Objections.** Objections to the calling of witnesses by the court or to interrogation by it may be made at the time or at the next available opportunity when the jury is not present.

ER 614.

This judicial authority arises from pragmatic considerations. While overseeing a trial, a judge may be called upon to rule on evidentiary objections, objections based on previous rulings, motions to dismiss and the like. Additionally, the trial judge must keep track of testimony in order to anticipate, and later rule on, proposed jury instructions. For many reasons, trial judges must keep an accurate contemporaneous account of trial testimony. In order to do so, judges must be able to clarify testimony given by the witnesses. Our case law recognizes that it is within the sound discretion of the trial court to pose clarifying questions to a witness. State v. Brown, 31 Wn.2d 475, 487, 197 P.2d 590, 202 P.2d 461 (1948).

## D

The judicial utterances challenged herein are the following:

[COUNSEL]: Thank you. Those are all my questions.

[TRIAL JUDGE]: *I have one question, Doctor, and that is, I don't know the technical jargon, you indicated that your understanding, you indicated that amount of blood that was noted at the scene was not extensive in your view.*[3]

DR. QUIGLEY: Yes.

[TRIAL JUDGE]: *What's your understanding, obviously you weren't there so you're relying on information from other sources on what the amount of blood was, and what I want to know is what's your information about what the amount of blood was?*[4]

DR. QUIGLEY: Well, someone described, I forget, I really apologize, two inches around the head, which is frankly a trivial amount of blood and fluid. And someone else said it was less than a can of soda, which would be less than two of these put together and that's not enough blood to cause death, it just isn't.

[TRIAL JUDGE]: *Uh-huh, okay. So the information that you've got comes from your reading of the chart notes?*[5]

DR. QUIGLEY: Depositions.

[TRIAL JUDGE]: *And from the depositions.*

DR. QUIGLEY: Actually from the depositions. I don't remember reading anything in the chart that said anything about blood loss. These were from eye-witnesses who were there and saw the patient and the amount of blood around his head.

[TRIAL JUDGE]: *Okay.*

[COUNSEL]: Your Honor, that triggers a couple follow-ups for me on this subject.

---

[3] Dr. Quigley had previously testified regarding the quantity of blood noted on the floor of Rodenbeck's hospital room:

Q. Did you see some deposition testimony about the amount of blood seen when Mr. Rodenbeck was found on the floor of his room?

A. Yes.

Q. In your opinion were the amounts described sufficient to be an actual cause of death for Mr. Rodenbeck?

A. Absolutely not.

Q. Why not?

A. Well, it takes an awful lot of blood loss to result in someone's death.

VRP at 1635-36.

[4] Dr. Quigley previously testified to having reviewed the eyewitnesses' chart notes and deposition testimony: "Q. Did you review medical records of Mr. Donald Rodenbeck? A. I did. Q. Did you also receive numerous deposition transcripts? A. I did." VRP at 1606-07.

[5] As set forth above, Dr. Quigley had testified that he had reviewed deposition testimony and Rodenbeck's medical chart notes. VRP at 1607, 1635-36.

> [TRIAL JUDGE]: Okay. Why don't you do those follow-up questions then we'll take our morning break and then we'll begin the cross-examination.

VRP at 1639-40 (emphasis added).

The trial judge's first utterance to Dr. Quigley oriented him to the testimony about which the judge was to inquire. The testimony the trial judge referenced was Dr. Quigley's prior testimony regarding the amount of blood noted on the floor of Rodenbeck's hospital room. Because the utterance concerned prior testimony with no reasonably inferable indicia of judicial opinion or attitude, the first utterance was not a judicial comment.

The second utterance revealed the trial judge's inquiry: clarification of Dr. Quigley's sources of information regarding the testimony to which the trial judge had just oriented him. Dr. Quigley had testified to having reviewed both the eyewitnesses' chart notes and deposition testimony in forming his various expert opinions. The trial judge acted well within her discretion by asking a clarifying question regarding past testimony. This was not a comment on the evidence.

The trial judge's third utterance was an attempt to clarify the witness's answer to the court's prior question. From this, we can infer a lack of clarity on the part of the trial judge—or in the judge's notes—as to the actual source of information specified in Dr. Quigley's previous answer. However, we cannot infer the trial judge's attitude or opinion of the witness's testimony. This utterance was not a judicial comment.

The trial judge's fourth utterance confirms the impression that the judge had been mistaken about the source of the information underlying Dr. Quigley's

testimony.[6] The utterance does not inform the listener as to the trial judge's attitude or opinion of the witness's testimony. It was not a judicial comment.

The trial judge's fifth utterance, "Okay," was not a judicial comment. Rather, it was a meaningless expression repeatedly used by the judge to indicate to the parties that the trial judge had finished her line of inquiry or to acknowledge some anticipated action by the parties. Indeed, on the day that Dr. Quigley testified, the trial judge said "Okay" on no less than 21 separate occasions while the jury was seated.[7] Furthermore, in the colloquy set forth above, immediately after the trial judge said "Okay," counsel for PeaceHealth rejoined that the judge's questioning "triggers a couple follow-ups for me on this subject." And, naturally, the trial judge replied, "Okay."[8] There was no comment on the evidence.

E

The parties cite several cases on the issue presented. All were decided in a manner consistent with our analysis herein.

Two cases warrant discussion. In Dennis v. McArthur, 23 Wn.2d 33, our Supreme Court rejected the contention that the trial judge had improperly commented on the evidence while examining a witness. During a medical malpractice trial, a physician who had treated the plaintiff testified that certain types of medical treatment were not to be used when treating pregnant women. The trial judge then posed a series of questions to the witness inquiring into

---

[6] The judge was uncertain whether the source was chart notes, depositions, or both.
[7] VRP at 1588, 1591 (three times), 1614, 1616, 1640 (three times), 1641, 1646, 1658, 1667 (twice), 1668 (twice), 1724, 1762, 1775, 1782, 1806.
[8] VRP at 1640.

whether the witness had diagnosed the plaintiff's case as a pregnancy case. Dennis, 23 Wn.2d at 37-38. After the witness admitted to not having done so, the trial court reiterated, "You had not yet diagnosed her?" Dennis, 23 Wn.2d at 37-38. The Supreme Court held that the trial judge's questioning "does not disclose any grounds for the jury to infer that the court had or expressed any opinion." Dennis, 23 Wn.2d at 38.

The questioning by the trial judge in Dennis was more probing and pointed than the utterances of the trial judge challenged herein. Nonetheless, the Dennis court held that the judicial questioning therein did not constitute a comment on the evidence. As the utterances challenged herein were more innocuous than those challenged in Dennis, our opinion is plainly consistent with the holding of that opinion.

In the second case that bears discussion, the Supreme Court described the circumstances as follows:

> At the close of respondent's case-in-chief, her counsel excused her main witness, an orthopedist who had treated her. He was about to rest her case, when the following occurred—to which error is assigned:
>
> [Respondent's counsel]: I have no further questions and ask that this doctor be excused.
> THE COURT: I would just inquire doctor.
>
> EXAMINATION BY COURT
>
> Q. In your best professional opinion, are you able to express an opinion rather, with reasonable medical certainty and circumstance of the treatments accorded this lady and her complaints to you, as to the approximate cause of the injuries? A. Yes.
> Q. What is your opinion? A. It would be my opinion that the injury she sustained was the proximate cause

- 10 -

of the complaints which she had at the time I examined her. Q. What in your opinion with reasonable medical certainty is the cause of the injury in view of the facts as you know them? A. Say that again. Q. What in your opinion is the cause of the injuries that you observed in view of the facts as they have been related to you by the patient? A. It would be my opinion that the injuries resulted from the automobile accident [January 24, 1964] she described to me in January.

In prior cross-examination, the following colloquy occurred:

A. [By doctor] . . . . We would inquire with regard to the area involved, as to whether she had complaints of long standing duration or previous complaints. Q. Did you ask Mrs. Risley [respondent] if she had any previous complaints? A. Yes. Q. Do you recall what her answer was? A. I noted at the time of my examination that she had no previous difficulty with the involved area prior to the time that she was injured. . . . Q. If she had been under treatment prior to the date of the accident, would that have influenced your opinion [from your examination] one way or another? A. Yes.

Appellants established that respondent had been treated by a chiropractor from October 1 to December 7, 1962, and January 22 until March 28, 1963, for neck and back injuries as well as other complaints. She had a cervical affliction in the neck at the first seven cervical vertebrae in her spine. About February 19, 1963, an industrial insurance claim had been filed with the state. This information was not given to the orthopedist who testified for respondent.

Another medical doctor testified for appellants. In his opinion, the respondent's present condition was the result of a degenerative disease of the cervical spine and this was not related to the accident trauma. A majority of patients with neck strain get over it within 3 to 6 months.

It thus becomes apparent that the trial judge's questioning of respondent's doctor was an essential and vital part of her case. In these questions, the court assumed the existence of these injuries and her condition as a result of the accident in question.

Risley, 69 Wn.2d at 561-62 (footnote omitted).

The Supreme Court noted that the case involved a "relatively short trial" (only 3 witnesses were called), and observed that "the judge's questions appear of great magnitude and importance." Risley, 69 Wn.2d at 565. As analyzed by the Supreme Court, the judge's

> questions assumed the crux of respondent's case—a factual issue for the jury, viz, whether she had sustained injuries as a result of this accident. Appellant always contended that respondent did not receive any injuries from the accident. The judge, by assuming this fact, appeared personally to corroborate and seemingly to indorse the credibility of respondent and her doctor. The judge frankly admitted this had a material and substantial influence upon the jury.

Risley, 69 Wn.2d at 565.

No such thing happened in the trial before us. Judge Garrett's questions did no more than clarify testimony already given. None of her utterances revealed her attitudes or opinions of the testimony or of the legitimacy of either party's case. The substitute judge erred by granting a new trial in reliance on the Risley decision.

### F

The challenged judicial utterances, individually and collectively, regarded prior testimony given by Dr. Quigley. No reasonable juror would believe that these utterances revealed any judicial opinion of or attitude toward that testimony. Thus, the trial judge did not comment on the evidence. Accordingly, the substitute judge's grant of a new trial must be reversed.[9]

---

[9] Our resolution of this case confines itself to an analysis of the order granting a new trial and the basis therefor. Long raised a variety of other issues or concerns in his briefing. We purposefully do not address these matters. If properly preserved, these issues may be raised in a direct appeal from the judgment.

Reversed and remanded for judgment to be entered on the jury's verdict.

We concur:

Dwyer, J.

Spearman, J.

Cox, J.