# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 76307-5-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| ALEXANDER SANDOVAL-ORTIZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: July 30, 2018 |
| | ) | |

MANN, A.C.J. — Alexander Sandoval-Ortiz appeals his convictions for murder in the first degree, possession of a stolen firearm, and alien in possession of a firearm, arising from the shooting of Carlos Lara-Ramos. Sandoval-Ortiz argues that the trial court erred in finding that he knowingly, voluntarily, and intelligently waived his Miranda[1] rights before his custodial interrogation and confession. We affirm.

## FACTS

On June 16, 2015, Lara-Ramos was shot in the chest in the parking lot of an Everett apartment complex. Lara-Ramos was pronounced dead shortly thereafter. Based on witness interviews, Everett police identified Sandoval-Ortiz as the suspect in the shooting.

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

On June 18, Everett police officers arrested Sandoval-Ortiz without incident. Sandoval-Ortiz was read his Miranda rights at the arrest scene. He agreed to talk to police and was taken to the Everett police station where he was interviewed. In a recorded interview, Detective Andrew Williams reread Sandoval-Ortiz his Miranda rights, in English, and Sandoval-Ortiz signed a form stating he understood the rights.

Sandoval-Ortiz initially denied any involvement in the murder. Later he admitted that he met Lara-Ramos to determine what was going on between him and Sandoval-Ortiz's former girlfriend. Eventually there was a scuffle. Sandoval-Ortiz was holding a gun and it went off. Sandoval-Ortiz claimed he had not intended to shoot Lara-Ramos. Sandoval-Ortiz showed the police where he discarded the gun. Forensic testing showed that the gun was the one that shot Lara-Ramos. Sandoval-Ortiz's deoxyribonucleic acid (DNA) was found on the gun.

Sandoval-Ortiz was charged by amended information with one count of first degree murder with a firearm allegation, one count of second degree murder with a firearm, (count 2), possession of a stolen firearm (count 3), and alien in possession of a firearm (count 4).

The court held a pretrial CrR 3.5 hearing on the admissibility of Sandoval-Ortiz's statements. Sandoval-Ortiz opposed admission of the statements arguing that because his native language was Spanish, and he was never advised of his Miranda rights in Spanish, his waiver of the right to silence was not knowing, intelligent, and voluntary.

Lieutenant James Duffy testified that shortly after Sandoval-Ortiz's arrest, he advised him of his Miranda rights by reading from an advisement card in English. Lieutenant Duffy asked if Sandoval-Ortiz understood, and Sandoval-Ortiz responded,

"yes." Lieutenant Duffy acknowledged that he knew Sandoval-Ortiz and knew he was from Mexico or Guatemala. However, he testified he was able to communicate with Sandoval-Ortiz in English without issue. Sandoval-Ortiz did not indicate he did not understand his rights or request an interpreter.

Detective Williams testified that before the interview at the Everett police station he reread Sandoval-Ortiz his Miranda rights in English, and Sandoval-Ortiz signed a form stating he understood the rights. Detective Williams interviewed Sandoval-Ortiz entirely in English. Sandoval-Ortiz did not request an interpreter or suggest he was having difficulty understanding at any point during the course of the interview. At the conclusion of the interview, Detective Williams had Sandoval-Ortiz read in English from the witness statement form indicating that his statement was true and given voluntarily without threats or promises.

Detective Maiya Atkins also participated in the police station interview. Atkins testified that it appeared Sandoval-Ortiz understood everything that was said in English, and, although Detective Williams had some difficulty with Sandoval-Ortiz's accent, she did not. Atkins testified that she did not seek to clarify whether Sandoval-Ortiz understood the rights he was waiving because his answers seemed appropriate and he responded "yeah" at appropriate times.

After considering the witness testimony, and reviewing the video recorded interview with Sandoval-Ortiz, the trial court found that the defendant spoke English well enough to knowingly waive his rights. The trial court found Sandoval-Ortiz had knowingly, freely, and voluntarily waived his rights, and that his statements made during the recorded interview were admissible at trial.

-3-

Sandoval-Ortiz pled guilty to the alien in possession of a firearm charge. A jury convicted Sandoval-Ortiz on the three remaining charges including the firearm enhancements. The trial court dismissed the conviction for murder in the second degree in order to avoid double jeopardy.

Sandoval-Ortiz appeals.

## ANALYSIS

### Waiver

Sandoval-Ortiz contends that the trial court erred when it admitted his custodial statements to made to detectives at the Everett Police Station. We disagree.[2]

Prior to a custodial interrogation, a suspect must be informed that "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning." Miranda v. Arizona, 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Any waiver of these rights by the suspect must be knowing, voluntary, and intelligent. State v. Radcliffe, 164 Wn.2d 900, 905-06, 194 P.3d 250 (2008).

"The State bears the burden of showing a knowing, voluntary, and intelligent waiver of Miranda rights by a preponderance of the evidence." Athan, 160 Wn.2d at 380. Language barriers may inhibit a suspect's ability to make a knowing and intelligent waiver of his Miranda rights. State v. Teran, 71 Wn. App. 668, 672, 862 P.2d 137 (1993), abrogated on other grounds by State v. Neeley, 113 Wn. App. 100, 105, 52 P.3d

---

[2] Several other statements made by the defendant to the arresting officers and the transportation officer were also admitted, however, those were found to be voluntary, and not the product of custodial interrogation. Sandoval-Ortiz does not contest these statements.

539 (2002). Courts review the totality of the circumstances—including the defendant's background, experience, and conduct—to ascertain if waiver was in fact knowing and voluntary. North Carolina v. Butler, 441 U.S. 369, 374, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979); Miranda, 384 U.S. at 475.

"We will not disturb a trial court's conclusion that a waiver was voluntarily made if the trial court found, by a preponderance of the evidence, that the statements were voluntary and substantial evidence in the record supports the finding." State v. Athan, 160 Wn.2d 354, 380, 158 P.3d 27 (2007) (citing State v. Broadaway, 133 Wn.2d 118, 129, 942 P.2d 363 (1997)). Findings of fact entered following a CrR 3.5 hearing will be verities on appeal if unchallenged, and, if challenged, they are verities if supported by substantial evidence in record. Broadaway, 133 Wn.2d at 131. Substantial evidence exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding. State v. Halstien, 122 Wn.2d 109, 129, 857 P.2d 270 (1993). We review conclusions of law de novo. State v. Johnson, 128 Wn.2d 431, 443, 909 P.2d 293 (1996).

Sandoval-Ortiz assigns error to the following findings of fact, (1) that Lieutenant Duffy read the Miranda rights in a fast, but understandable manner, (2) that Sandoval-Ortiz never gave any indication that he did not understand the officers, and (3) that the "defendant speaks, reads, and understands English well."

Substantial evidence supports the trial court's findings that Sandoval-Ortiz spoke, read, and understood English, without apparent difficulty, at all times while in the presence of arresting officers, the transportation officer, and the detectives. Substantial evidence further supports the trial court's finding that Lieutenant Duffy advised

Sandoval-Ortiz in a fast, but understandable manner, and that Sandoval-Ortiz acknowledged his rights. Lieutenant Duffy and the arresting officers testified that Sandoval-Ortiz continuously spoke in English, and never indicated that he was unable to understand his rights. We defer to a trial court's assessment of credibility. State v. Hill, 123 Wn.2d 641, 646, 870 P.2d 313 (1994).

The record includes, and the trial court reviewed, the entire recording of the custodial interview. During the interview Sandoval-Ortiz spoke only English and never indicated he was unable to understand the detectives' questions or statements. Sandoval-Ortiz acknowledged that he understood each right after Detective Williams read it to him and did not indicate he failed to understand any aspect of his rights. Sandoval-Ortiz then signed a form acknowledging that he understood his rights. At the conclusion of the interview, Sandoval-Ortiz read his statement aloud, in English, and signed the form stating no threats or promises were made to him before he waived his rights.

Substantial evidence supports the trial court's findings and its conclusion that Sandoval-Ortiz's proficiency with English did not hinder his ability to knowingly and intelligent waive of his Miranda rights. The totality of the circumstances demonstrates that Sandoval-Ortiz understood his Miranda rights and voluntarily, knowingly, and intelligently waived them.

### Statement of Additional Grounds

In his statement of additional grounds, Sandoval-Ortiz argues the trial judge committed constitutional error in making "specific and direct inquires to the State's witnesses" during the CrR 3.5 hearing. Sandoval-Ortiz argues the judge improperly

relieved the State of its burden of proof by asking questions of the witnesses. We hold this argument is without merit.

Under ER 614(b), the trial court may interrogate witnesses, or ask clarifying questions of a witness, "provided, . . . that in trials before a jury, the court's questioning must be cautiously guarded so as not to constitute a comment on the evidence." In this case, the trial court asked two clarifying questions when there was no jury present. The trial court's questions did not constitute a comment on the evidence and were proper. See Egede-Nissen v. Crystal Mountain, Inc., 93 Wn.2d 127, 140, 606 P.2d 1214 (1980); State v. Brown, 31 Wn.2d 475, 197 P.2d 590, 202 P.2d 461 (1948).

We affirm.

Mann, ACJ

WE CONCUR:

Andrus, J.

Dwyer, J.