[No. 33051.   Department Two.   August 11, 1955.]

SYSTEM TANK LINES, INC., *Appellant*, v. CLARENCE G. DIXON *et al.*, *Respondents*.[1]

[1]Reported in 286 P. (2d) 704.

*Joseph E. Hurley*, for appellant.

*Del Cary Smith* and *Del Cary Smith, Jr.*, for respondents.

FINLEY, J.—This is an action to recover for property damage and personal injury. It is a companion case to *Fink v. Dixon*, 46 Wn. (2d) 794, 285 P. (2d) 557. Both cases arose out of an explosion of the trailer portion of a tank-truck rig used for the transportation of gasoline.

The plaintiff corporation (hereinafter called System) operated a fleet of tank trucks. Normally, these were maintained and repaired in a shop in Spokane. It was operated exclusively for the servicing of System equipment by a subsidiary, the System Parts & Equipment Co., under the supervision of a Mr. Charles Duncan. In July of 1953, as a result of a labor dispute involving several trucking firms in

the area and the Machinists Union, several repair shops of trucking firms in Spokane other than System were on strike. System laid off its employees on July 17, 1953, and closed its automotive repair shop for the duration of the strike.

At this time, the defendant partners were operating a small, independent automotive repair shop in Spokane under the trade name of Commercial Truck and Automotive Repair Service. To keep its own rolling stock in repair, System entered into an agreement with the defendant partners whereby System's tank trucks and trailers were to be repaired in defendants' shop. The shop was to be paid the fixed sum of $3.50 per man hour for any work done on System equipment. Out of this, the defendants would pay (ostensibly, at a lesser rate per hour) the wages of all mechanics who worked upon System equipment in defendants' shop. All automotive or other parts used in the repair of System equipment were to be supplied by System.

Under the above-described arrangement, one of System's tankers was repaired at the defendants' shop on July 22nd. The repair work thereon was done by Mr. Holinka (System's day foreman) and two other mechanics, formerly employees of System, but laid off at the time because of the strike, as mentioned above. The defendant partners did not work on the rig, did not exercise any supervision of work performed thereon, and did not even know the nature of the repairs that were made.

A second tank truck and trailer was sent over to defendants' shop on July 24th. With it was a work sheet from System, and again the initial work was done by Mr. Holinka and three mechanics who previously had been laid off from their regular employment with System. Part of the repair work on the second tank truck and trailer involved a small welding job on the trailer. Mr. Holinka was not familiar with the defendants' welding equipment, and requested defendant Dixon to do the welding. The trailer, which had been used to transport gasoline, had been steam cleaned for three and one-half hours by System prior to its delivery to defendants' shop. This fact was known to Mr. Holinka. Mr. Dixon, an experienced welder, testified that he was

aware of the danger in welding a gasoline tanker; furthermore, he stated that three and one-half hours of steam cleaning was inadequate preparation to render a gasoline tanker safe for welding, but that he did not know the tanker had been steam cleaned for only three and one-half hours.

In addition to the foregoing, there was evidence that the defendants did not give any instruction as to the work to be done for System on the particular tank truck and trailer; that the workmen involved brought their own tools, were summoned to work by Mr. Holinka, System's day foreman, and had their tasks assigned to them by him; furthermore, that the work cards used for the workmen and the tax withholding statements filled out by them were supplied by System and bore its firm name.

System brought this action to recover damages to the tanker and trailer. The defendants denied liability, and counterclaimed for damages to their property. Defendant Dixon further counterclaimed for his personal injuries. At the close of their opponent's case, both sides challenged the sufficiency of the other's evidence and moved for nonsuit. The motions were denied. The case was submitted to a jury, and resulted in a verdict for the defendants on both causes of action. After System's motion for a new trial was denied, this appeal was instituted.

■ Appellant System's first assignment of error is directed to the denial by the trial court of its motion for nonsuit. This assignment of error will not be considered for the reason that System did not stand on its motion for nonsuit, but introduced evidence in rebuttal, and proceeded with the trial. *Gardner v. Porter*, 45 Wash. 158, 88 Pac. 121; *Conner v. Seattle, Renton & Southern R. Co.*, 56 Wash. 310, 105 Pac. 634.

■ In a second assignment of error, appellant System urges that it was error for the trial court to deny its motion for a new trial because the evidence was insufficient to support the verdict of the jury. Under the circumstances, the evidence must be interpreted most strongly against the moving party, and the ruling of the trial court will not be

disturbed except for clear abuse; *Holloway v. Savage,* 68 Wash. 614, 123 Pac. 1021; see, also, *Billingsley v. Rovig-Temple Co.,* 16 Wn. (2d) 202, 133 P. (2d) 265; *Neel v. Henne,* 30 Wn. (2d) 24, 190 P. (2d) 775.

Appellant System's second assignment of error raises the following questions: Was there evidence from which the jury properly might find (a) that Mr. Holinka was an employee of and engaged in work for appellant at the time of the explosion? (b) that he made the crucial assurances to Mr. Dixon that the trailer was in a condition safe for welding? (c) that it was reasonable for Mr. Dixon to rely upon Holinka's assurances? These questions may be reduced to a basic or general one, namely: Was there evidence from which the jury properly might conclude that appellant System·was negligent? The final point to be determined is whether the evidence was such that it may be said, as a matter of law, that defendant Dixon should be charged with contributory negligence and denied any recovery.

As stated by us in *Fink v. Dixon, supra,* negligence consists in the doing of an act which a reasonable man would not have done, or in the failure to do an act which a reasonable man would have done under similar circumstances. See *Malland v. Sims,* 173 Wash. 649, 24 P. (2d) 70, 27 P. (2d) 1119; *Severns Motor Co. v. Hamilton,* 35 Wn. (2d) 602, 214 P. (2d) 516; *LeMoreaux v. Fosket,* 45 Wn. (2d) 249, 273 P. (2d) 795.

There was considerable conflict in the testimony, but, considering the evidence relative to the facts outlined above, we are convinced that it was sufficient to support the jury's finding of negligence on the part of appellant System.

The final question involves System's contention that respondent Dixon was, as a matter of law, guilty of contributory negligence. As to this aspect of this appeal, in *Shook v. Bristow,* 41 Wn. (2d) 623, 625, 250 P. (2d) 946, we said:

"In considering appellant's argument, we bear in mind the following rules: (1) That the question whether there has been negligence or contributory negligence is one for the jury unless the facts are such that all reasonable men

must draw the same conclusion from them, in which event the question is one of law for the courts."

As stated above, expert testimony was introduced during the trial as to the proper safety methods usually observed in welding tankers used for the transportation of gasoline. Mr. Dixon testified that he was an experienced welder, and that for several years he had welded containers used for inflammable substances. He described the precautions usually taken before welding a gasoline tanker. By his own testimony, he indicated that the welding of the tank trailer in this particular instance would have been negligent, unless it was reasonable for him to rely on certain alleged representations of Mr. Holinka, System's foreman. From the evidence outlined above, the jury was justified in finding that Mr. Holinka intended to do the welding, but, being unfamiliar with respondents' equipment, had requested Mr. Dixon to do the job for him; that Mr. Holinka inspected the tank trailer and represented it as safe for welding and in the condition such trailers usually were when welded by System.

It is a general rule of law that one who relies on representations of another and fails to take reasonable precautions for his own safety is not guilty of contributory negligence, if a reasonable man would have relied on the representations under the same circumstances. *Perry v. D. J. & T. Sullivan, Inc.*, 219 Cal. 384, 26 P. (2d) 485; *Moore v. Jefferson Distilling & Denaturing Co.*, 12 La. App. 405, 123 So. 384; *Johnson v. Land O'Lakes Motor Co.*, 218 Minn. 404, 16 N. W. (2d) 466; *Heldenfels v. Montgomery*, 157 S. W. (2d) 998 (Tex. Civ. App. 1942; writ of error refused by supreme court).

The question of the reasonableness of Mr. Dixon's reliance on the assurances of Mr. Holinka is one of fact. We think the question was properly submitted to the jury by the trial court. In other words, we are not convinced that the evidence was such that all reasonable men would conclude therefrom that Mr. Dixon acted unreasonably and in

disregard for his safety. Under the evidence, he was not chargeable with contributory negligence as a matter of law.

The judgment of the trial court is affirmed.

HAMLEY, C. J., MALLERY, HILL, and ROSELLINI, JJ., concur.

