# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| VERL LEE and MARSHA LEE, husband and wife,<br><br>      Respondents and Cross-Appellants,<br><br>      v.<br><br>WILLIS ENTERPRISES, INC., a Washington Corporation, and DANIEL FLETCHER,<br><br>      Appellants and Cross-Respondents. | No. 46374-1-II<br><br><br><br><br><br>PART PUBLISHED OPINION |

JOHANSON, J. — In this negligence action, a jury found Daniel Fletcher and his employer, Willis Enterprises, Inc., primarily liable for injuries sustained by Verl Lee following an incident at Willis' log processing mill. Fletcher and Willis appeal a judgment against them, arguing that the trial court (1) erred by granting partial summary judgment in Lee's favor regarding Fletcher's negligence and (2) abused its discretion at trial by excluding Fletcher's testimony regarding Lee's state of mind and by admitting evidence of Fletcher's character contrary to ER 404(a). In the published portion of this opinion, we hold that the trial court properly granted partial summary judgment concerning Fletcher's negligence. In the unpublished portion of this opinion, we further hold that any evidentiary error does not warrant reversal. We affirm.

FACTS

I. BACKGROUND

Willis owns and operates a mill that processes whole logs into wood chips. In January 2010, the mill operations stopped because of a disabled "variable frequency drive" (VFD). The VFD is a piece of high-voltage electrical equipment that controlled the speed of the motors that ran a drum used to debark the logs for processing. The VFD was mounted in an elevated cabinet measuring approximately six feet wide by six feet tall. The VFD comprises nine capacitors arranged in sets of three panels. Above these capacitors on top of the VFD was a small square fan that provided cool air to the unit.

Willis contacted Advanced Electrical Technologies to help repair the disabled VFD. The company dispatched its employee Lee, an electronics technician, to Willis to repair the VFD. Upon his arrival, Willis directed Fletcher, one of Willis' "loader operator[s]," to escort Lee to the VFD's location. Clerk's Papers (CP) at 966. Fletcher understood that he was to "help [Lee] get [the VFD] running." CP at 264.

Lee performed several tests on the VFD to diagnose the issue, ultimately concluding that the VFD needed to be disassembled. Lee turned off the power to the VFD. Fletcher assisted Lee, first by bringing Lee an air hose to remove dust and debris from the VFD and later by assisting Lee with the removal of the capacitors. After the VFD had been disassembled and reassembled, Lee turned the power back on, but the VFD did not restart.

Lee then examined the VFD from above the device and concluded that the VFD's fan was causing the problem. Fletcher and Lee searched for a replacement fan, but they could not locate one. Seeking to examine the fan from a closer vantage point, Lee "got up inside the [VFD cabinet]

2

and got over to the section where [he] could look with [his] little flashlight down inside." CP at 982. Doing so enabled Lee to confirm that the fan was not functioning.

It occurred to Fletcher that he might fix the stuck fan by "hit[ting] it." CP at 294. To do so, Fletcher picked up a screwdriver from a nearby toolbox and announced that he was going to "tap" the fan. CP at 270. As Fletcher attempted to tap the fan with the screwdriver, he inadvertently contacted part of the energized VFD causing an "electrical arc blast" and creating what Lee described as "the loudest sound [he had] ever heard." CP at 991, 982. Fletcher and Lee were the only witnesses to the event and their accounts of the moments immediately preceding the incident differed.

According to Fletcher, Lee was inside the VFD cabinet shining his flashlight for "a couple minutes" before Fletcher tried to use the screwdriver to restart the fan. CP at 1016. Fletcher believed that Lee saw him holding the screwdriver. In his deposition, Fletcher testified that 15 seconds elapsed between the time he announced to Lee that he would attempt to "tap" the fan and the moment he did so. CP at 271. During those 15 seconds, Fletcher explained that Lee "stood there and held that flashlight to where [Fletcher] could see [the fan]." CP at 270. Fletcher interpreted this inaction as Lee's tacit endorsement of the plan. He expected Lee to say something if Lee felt that using the screwdriver in the VFD created a dangerous situation.

Lee's account differed. Lee recalled Fletcher saying he could hit the fan with the screwdriver, but Lee could remark only "no, you can't" before Fletcher bent down and inserted the tool into the VFD and set off the blast. CP at 982.

Because of the electrical arc blast, Lee's hearing was irreparably damaged. Various tones ring constantly in Lee's head, and he suffers from chronic pain behind his eyes. Lee was rendered unemployable because of the incident.

## II. PROCEDURE

Lee filed a complaint against Willis and Fletcher, alleging that Fletcher negligently inserted the screwdriver into the VFD and that this negligent act caused the arc and subsequent explosion that caused Lee's injuries. The complaint further alleged that because Fletcher's conduct occurred within the scope and course of his employment, Willis was liable under the doctrine of respondeat superior.

Before trial, Lee moved for partial summary judgment on the issue of Fletcher's negligence, urging the trial court to find that Fletcher's insertion of the screwdriver into the VFD was negligent as a matter of law. Lee contended that Fletcher was negligent as a matter of law because he was not qualified to perform work on the VFD, he knew it was energized during the incident, other Willis employees admitted that it would be unwise to touch an energized VFD, and Fletcher put the screwdriver into the VFD without being directed to do so by Lee.

Fletcher responded that summary judgment was not proper for two reasons. First, he argued that reasonable minds could disagree on the issue of whether Lee knew of and had cooperated with the plan and whether the two men had agreed on that course of action as evidenced by Lee's holding of the flashlight. Second, he argued that reasonable minds could disagree regarding the foreseeability of Lee's injuries, citing to Lee's statements admitting that he would not have anticipated an arc blast to have resulted from Fletcher's actions.

4

During the motion hearing, Fletcher argued that a finding of negligence as a matter of law was improper because he believed that his actions had been approved by Lee. Fletcher argued that considering the facts in a light most favorable to him, he was doing something that had been "approved by the guy that was running the show" and his actions were reasonable considering the circumstances. Report of Proceedings (RP) (Jan. 21, 2014) at 11. The trial court granted Lee's motion.

The jury was instructed that Fletcher was negligent and that Fletcher's negligence was a proximate cause of Lee's injuries. The jury found Fletcher 90 percent at fault and Lee 10 percent at fault. The trial court entered a judgment against Fletcher and Willis for damages. Fletcher and Willis appeal.[1]

## ANALYSIS

### PARTIAL SUMMARY JUDGMENT

Fletcher contends that the trial court erred by granting summary judgment for two reasons. First, Fletcher contends that a jury should have determined whether Lee's injury was foreseeable. Second, Fletcher asserts that the trial court erred by rejecting his "implicit assurance of safety" theory. Br. of Appellant at 39. We disagree and affirm the trial court's order granting partial summary judgment in Lee's favor.[2]

---

[1] At the close of the evidence at trial, Lee moved to amend his complaint to conform to the evidence presented. The trial court denied his motion and Lee cross appealed the court's ruling. We need not address Lee's specific contention because he asked us to do so only if we conclude that the trial court abused its discretion in making the evidentiary rulings discussed below and we hold that it did not.

[2] Lee argues that Fletcher waived the foreseeability argument by failing to raise this issue before the trial court. However, even if we address this argument on the merits, it fails. Thus, we address Lee's waiver argument no further.

A.  LEGAL PRINCIPLES

We review summary judgment orders de novo, performing the same inquiry as the superior court.  *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004).  Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  CR 56(c); *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).  When reviewing a summary judgment, we consider all facts and reasonable inferences from them in the light most favorable to the nonmoving party.  *Vallandigham*, 154 Wn.2d at 26; *Magula v. Benton Franklin Title Co.*, 131 Wn.2d 171, 182, 930 P.2d 307 (1997).

To establish the elements of an action for negligence, the plaintiff must show (1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury.  *Iwai v. State*, 129 Wn.2d 84, 96, 915 P.2d 1089 (1996).  Whether a legal duty exists is a question of law, but whether a party has breached a duty is a question of fact.  *See Hertog, ex rel. S.A.H. v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999).

A person whose conduct involves an unreasonable risk of harm to another is under a duty to exercise reasonable care to prevent the risk from taking effect.  *Minahan v. W. Wash. Fair Ass'n*, 117 Wn. App. 881, 897, 73 P.3d 1019 (2003) (internal quotation marks omitted) (quoting RESTATEMENT (SECOND) OF TORTS § 321 (1965)).  "'Negligence is generally a question of fact for the jury, and should be decided as a matter of law only in the clearest of cases and when reasonable minds could not have differed in their interpretation of the facts.'"  *Millson v. City of Lynden*, 174

Wn. App. 303, 312, 298 P.3d 141 (2013) (internal quotation marks omitted) (quoting *Bodin v. City of Stanwood*, 130 Wn.2d 726, 741, 927 P.2d 240 (1996)).

## B. FORESEEABILITY

Here, Fletcher does not dispute the existence of a legal duty. Rather, he challenges the scope of that duty, arguing that the trial court erred by granting partial summary judgment on the issue of Fletcher's negligence in part because the injury suffered by Lee was not foreseeable and, therefore, reasonable minds could differ whether Fletcher should have known that his actions created an unreasonable risk of harm. We disagree.

As Fletcher recognizes, once the existence of a legal duty is established as a matter of law, the scope of that duty is determined by analyzing the foreseeability of the harm to the plaintiff. *Schooley v. Pinch's Deli Market, Inc.*, 134 Wn.2d 468, 474, 477, 951 P.2d 749 (1998). This inquiry is normally an issue for the trier of fact and is decided as a matter of law only where reasonable minds cannot differ. *Schooley*, 134 Wn.2d at 477. The concept of foreseeability ensures that "actors are responsible only for the foreseeable consequences of their actions." *Schooley*, 134 Wn.2d at 477.

In Fletcher's view, no negligence can be attributed to him because he had neither actual nor imputed knowledge that tapping the fan blade with the screwdriver posed an unreasonable risk of harm in the *specific form* in which it occurred. Therefore, Fletcher argues that reasonable minds could differ whether he should have known that (1) an electrical arc blast would occur, (2) there was serious risk of hearing damage from such a blast, and (3) a bystander such as Lee would be injured. Fletcher points out that even Lee, a trained electrical technician, testified in his deposition that he had no reason to anticipate that an arc blast would occur while working on the VFD.

7

But as Lee correctly recognizes, "foreseeability is a flexible concept, and a defendant will not be relieved of responsibility simply because the exact manner in which the injury occurred could not be anticipated." *Anderson v. Dreis & Krump Mfg. Corp.*, 48 Wn. App. 432, 443, 739 P.2d 1177 (1987). Rather, the test of foreseeability is whether the result of the act is within the general field of danger which should have been anticipated. *Rikstad v. Holmberg*, 76 Wn.2d 265, 269, 456 P.2d 355 (1969). Foreseeability is an objective test and it "'is a matter of what the actor knew or should have known under the circumstances; it turns on what a reasonable person would have anticipated.'" *Seeberger v. Burlington N. R.R. Co.*, 138 Wn.2d 815, 823, 982 P.2d 1149 (1999) (quoting *Ayers v. Johnson & Johnson Baby Prods. Co.*, 117 Wn.2d 747, 764, 818 P.2d 1337 (1991)).

That Fletcher may not have specifically anticipated that an electrical arc blast would occur that could cause hearing damage to Lee does not render that risk unforeseeable. Instead, it is foreseeable as a matter of law that serious injury could result from careless behavior while working in and around energized high-voltage electrical equipment. An ordinary reasonable and prudent person would expect that such a risk of harm could be created under those circumstances. Therefore, we hold that the trial court did not err by granting summary judgment for this specific reason because Lee's injuries were reasonably foreseeable.[3]

## C.  IMPLIED ASSURANCE OF SAFETY

Fletcher also argues that the trial court erred by granting partial summary judgment because he may rely on what he deemed an implicit assurance of safety in Lee's apparent agreement with

---

[3] Lee argues that if the trial court erred by granting his motion for partial summary judgment, any error is nevertheless harmless because of admissions made by Fletcher and other witnesses at trial. Because we conclude that the trial court did not err, we need not reach this issue.

his plan to use the screwdriver to contact the VFD's fan. He asserts this is so because a person who gives an assurance of safety must exercise reasonable care in doing so. *See Alston v. Blythe*, 88 Wn. App. 26, 36, 943 P.2d 692 (1997). This argument fails.

Fletcher cites several cases to support this proposition. *See Alston*, 88 Wn. App. at 37 (holding that if a driver waived a pedestrian to cross in front of his truck, he had a duty to use reasonable care to ensure that plaintiff's safety); *Panitz v. Orenge*, 10 Wn. App. 317, 319, 518 P.2d 726 (1973) (finding that bus driver's negligence was an issue for the jury where driver waived plaintiff across the street). Fletcher, however, relies primarily on *System Tank Lines v. Dixon*, 47 Wn.2d 147, 286 P.2d 704 (1955).

There, a foreman in the System Tank Lines shop asked a welder from an independent company to perform welding on one of its tanker trucks. *Sys. Tank Lines*, 47 Wn.2d at 150. The welder knew that welding work on a gasoline tanker could be dangerous, but the shop foreman had apparently inspected the tanker and represented that it was safe to perform the work in that instance. *Sys. Tank Lines*, 47 Wn.2d 152. The welder, however, was injured during his work and made a claim against System Tank Lines. *Sys. Tank Lines*, 47 Wn.2d at 150. Our Supreme Court held that "[i]t is a general rule of law that one who relies on representations of another and fails to take reasonable precautions for his own safety is not guilty of contributory negligence, if a reasonable man would have relied on the representations under the same circumstances." *Sys. Tank Lines*, 47 Wn.2d at 152. The question of the reasonableness of the reliance on those assurances, the court ruled, was one of fact. *Sys. Tank Lines*, 47 Wn.2d at 152.

With the support of this authority, Fletcher argues that had the jury been allowed to decide the issue of his negligence, it could have found that Lee accepted Fletcher's assistance and that

Lee at least implicitly provided an assurance of Fletcher's safety when he declined to instruct Fletcher not to use the screwdriver in the 15 seconds after Fletcher announced his plan to do so. Fletcher contends that the trial court's ruling on Lee's motion for partial summary judgment precluded this defense.

Lee responds that each case cited by Fletcher involved affirmative conduct where here, Fletcher admitted that Lee did not encourage him or affirmatively request the use of the screwdriver in the VFD. Fletcher testified that Lee did not say or do anything aside from continuing to hold the light in response to his suggestion. Lee argues that there is no authority that holds silence and inaction can give rise to an implied assurance of safety.

Lee is correct. Each cited case involved either the plaintiff's contributory negligence or the reasonableness of the party's express assurance of safety. Fletcher does not establish how these cases absolve him of negligence as the defendant. Accordingly, we hold that the trial court did not err by denying Lee's partial summary judgment motion on this basis.

We affirm.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

## ADDITIONAL FACTS

Before trial, the parties filed two motions in limine related to this appeal. First, Lee moved in limine to exclude argument that he and Fletcher had an agreement that Fletcher would tap the fan. The trial court ruled that there was no evidence of an agreement between Fletcher and Lee and, therefore, Fletcher could not testify that Lee appeared to agree with his plan. But the court

clarified that Fletcher could testify regarding his perception of the events, so long as he did not speculate what he believed Lee was thinking or what Lee understood.

Second, Fletcher moved in limine to exclude statements from Walter Brannock, Willis' millwright, that Fletcher was "kind of a doer, and if you don't coach him and tell him what to do, he just does" and that "you just kind of keep [Fletcher] on a short leash." CP at 969. Fletcher moved to exclude this testimony as improper character evidence. The trial court initially reserved ruling on this issue, but later ruled that the defendants had opened the door and that, therefore, the testimony would be permitted "due to testimony presented by [d]efendants during trial." CP at 624. The court so ruled following testimony that established that Willis' company policy was that when a Willis employee is with a contractor, the contractor is in "charge of that project" and the employee is to follow his or her directions. RP (Feb. 21, 2014 AM) at 75.

Lee argued that this testimony raised the issue of Willis' control over its employees and opened the door for evidence that Fletcher needed to be kept on a short leash. The trial court agreed that whether Fletcher "had a tendency to act" was fair game. RP (Feb. 21, 2014 AM) at 81.

ANALYSIS

EVIDENTIARY RULINGS

Fletcher contends that two trial court evidentiary rulings were error. Finding harmless error in the first instance and no error in the second instance, Fletcher's arguments fail.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 668-69, 230 P.3d 583 (2010). An abuse of discretion occurs when the trial court's decision is based on untenable grounds or untenable reasons. *Kappelman v. Lutz*, 167 Wn.2d 1, 6, 217 P.3d 286 (2009). A trial court's decision is manifestly

unreasonable if it "'adopts a view that no reasonable person would take.'" *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006) (internal quotation marks omitted) (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)). A decision is based on untenable grounds or for untenable reasons if the trial court applies the wrong legal standard or relies on unsupported facts. *Mayer*, 156 Wn.2d at 684.

When a trial court makes an erroneous evidentiary ruling, the question on appeal becomes "whether the error was prejudicial, for error without prejudice is not grounds for reversal." *Brown v. Spokane County Fire Prot. Dist. No. 1*, 100 Wn.2d 188, 196, 668 P.2d 571 (1983). An error will not be considered prejudicial and harmless unless it affects the outcome. *Brown*, 100 Wn.2d at 196.

## A. LEE'S STATE OF MIND

First, Fletcher asserts that the trial court abused its discretion because although the rules of evidence require lay witnesses to testify based on personal knowledge, Fletcher should have been able to testify on Lee's state of mind. We disagree.

Typically, witnesses must testify based on personal knowledge. ER 602. But a witness may "'testify about the state of mind of another, so long as the witness personally witnessed events or heard statements that are relevant to prove the other person's state of mind.'" *In re Estate of Black*, 153 Wn.2d 152, 167, 102 P.3d 796 (2004) (quoting *State v. Contreras*, 57 Wn. App. 471, 477, 788 P.2d 1114 (1990)). "When a trial court makes an erroneous evidentiary ruling, the question on appeal becomes 'whether the error was prejudicial, for error without prejudice is not grounds for reversal.'" *Mut. of Enumclaw Ins. Co. v. Gregg Roofing, Inc.*, 178 Wn. App. 702, 728-29, 315 P.3d 1143 (2013) (quoting *Brown*, 100 Wn.2d at 196), *review denied*, 180 Wn.2d

1011 (2014). If an error affects the outcome of the case, it is prejudicial and not harmless. *Peralta v. State*, 191 Wn. App. 931, 951, 366 P.3d 45 (2015).

Here, because Fletcher observed Lee in the moments before the incident, Fletcher perceived the events that, in his view, demonstrated Lee's acceptance of his conduct. But even if the trial court erred by precluding Fletcher from testifying to his perceptions as to why Lee shined the flashlight, we conclude that any error was harmless.

Fletcher testified regarding everything Lee said and did on the day of the incident and each of the interactions between them. Only when Fletcher attempted to testify specifically that Lee held the flashlight so Fletcher could see well did the trial court sustain Lee's objection and strike Fletcher's answers. Thus, the jury heard all of the testimony from which they could ascertain why, in their view, Lee continued to hold the flashlight.

Fletcher asserts that the excluded testimony was crucial to part of his defense, which was that Fletcher acted with Lee's implicit approval. But Fletcher argued in closing argument based on the evidence admitted that he believed that he and Lee had an agreement for Fletcher to tap the fan. Therefore, any error was harmless because Fletcher was not prevented from arguing his theory of the case to the jury and he fails to demonstrate how this alleged error affected the outcome of the trial. We conclude that any potential error was harmless.

## B. CHARACTER EVIDENCE

Second, Fletcher asserts that the trial court abused its discretion by admitting character evidence contrary to ER 404(a). Again, this argument fails.

Evidence must be relevant to be admissible, meaning it must tend to "make the existence of any fact that is of consequence to the determination of the action more probable or less

probable." ER 401; *Degroot v. Berkley Constr., Inc.*, 83 Wn. App. 125, 128, 920 P.2d 619 (1996). Even if arguably relevant, however, evidence of a character trait is generally not admissible to show that the party acted in conformity therewith on a particular occasion. ER 404(a); *see* 1 MCCORMICK ON EVIDENCE, § 189 at 655 (5th ed. 1999); *Himango v. Prime Time Broad., Inc.*, 37 Wn. App. 259, 265, 680 P.2d 432 (1984). But a party may open the door to otherwise inadmissible evidence.

The trial court has considerable discretion in administering this open door rule. *Ang v. Martin*, 118 Wn. App. 553, 562, 76 P.3d 787 (2003), *aff'd*, 154 Wn.2d 477, 114 P.3d 637 (2005). "The rule is aimed at fairness and truth-seeking." *Ang*, 118 Wn. App. at 562.

> "It would be a curious rule of evidence which allowed one party to bring up a subject, drop it at a point where it might appear advantageous to him, and then bar the other party from all further inquiries about it. Rules of evidence are designed to aid in establishing the truth. To close the door after receiving only a part of the evidence not only leaves the matter suspended in air at a point markedly advantageous to the party who opened the door, but might well limit the proof to half-truths."

*Ang*, 118 Wn. App. at 562 (quoting *State v. Gefeller*, 76 Wn.2d 449, 455, 458 P.2d 17 (1969)). The determination that a party has opened the door is reviewed for abuse of discretion. *State v. Bennett*, 42 Wn. App. 125, 127, 708 P.2d 1232 (1985).

Here, after initially reserving ruling regarding whether Lee could offer testimony that Fletcher was a "doer" and needed to be kept on a "short leash," the trial court ruled that Fletcher opened the door to such testimony. The trial court warned Fletcher that if he took the position that Lee was in charge of Fletcher, it could open the door to the evidence of Fletcher's tendency to do things without being asked and needing to be kept on a short leash. The court then admitted the challenged testimony after Fletcher's counsel established that Willis' company policy was that

when a Willis employee is with a contractor, the contractor is in "charge of that project" and the employee is to follow his or her directions. RP (Feb. 21, 2014 AM) at 75.

Lee argued that this testimony raised the issue of Willis' control over its employees and opened the door for evidence that Fletcher needed to be kept on a short leash. The trial court agreed that whether Fletcher "had a tendency to act" was fair game. RP (Feb. 21, 2014 AM) at 81. Fletcher argues that the trial court abused its discretion by permitting the "short leash" testimony because that testimony was not irrelevant, inadmissible character evidence being used only as propensity evidence contrary to ER 404(a).

But it was Fletcher who made this testimony relevant because he raised the issue of Lee's control over the situation by implying that Lee should have exercised better judgment as the contractor "in charge." RP (Feb. 21, 2014 AM) at 75. Fletcher therefore created the inference that Lee's lack of control was a cause, if not the cause, of the incident and that perhaps it could have been avoided had he paid more attention. And under the "opening the door doctrine," when one party injects evidence into a trial—here, who should have "controlled" Fletcher—the opposing party may offer evidence that might otherwise be inadmissible to rebut any unfair inferences that arise from the original evidence. *Gefeller*, 76 Wn.2d at 455.

The trial court ruled that because Fletcher made a significant point of the fact that Lee should have been in control of Fletcher, it was "fair game" that Fletcher had a "tendency to act" that Lee should be permitted to explore. RP (Feb. 21, 2014 AM) at 81. Because Fletcher alleged that Lee should have controlled Fletcher, the trial court reasoned that fairness dictated that Lee should have been warned that Fletcher needed to be kept on a short leash so that Lee would be "aware of what he's getting to be in charge of." RP (Feb. 21, 2014 AM) at 81. The trial court's

ruling provided Lee an opportunity to offer otherwise inadmissible evidence to rebut the inference that he was negligent for failing to prevent the accident by controlling Fletcher, consistent with the purpose of the open door doctrine. We hold that the trial court did not abuse its discretion because its ruling was not manifestly unreasonable or based on untenable grounds.

We affirm.

JOHANSON, J.

I concur:

WORSWICK, J.

MAXA, J. (dissenting) – I believe that the trial court erred in ruling that Daniel Fletcher was negligent as a matter of law. Accordingly, I dissent.

Whether a defendant is negligent depends on the particular circumstances surrounding the incident giving rise to the plaintiff's injury. The Washington pattern instruction defining negligence states that negligence "is the doing of some act that a reasonably careful person would not do *under the same or similar circumstances*." 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 10.01 (6th ed. 2012) (WPI) (emphasis added). The pattern instruction defining ordinary care states that ordinary care means "the care a reasonably careful person would exercise *under the same or similar circumstances*." WPI 10.02 (emphasis added). As the majority notes, negligence generally is a question of fact for the jury and should be decided as a matter of law only in the clearest of cases. *Millson v. City of Lynden*, 174 Wn. App. 303, 312, 298 P.3d 141 (2013).

Here, the key circumstances were that (1) Verl Lee had specialized knowledge, experience and training regarding the repair of variable frequency drives (VFDs), (2) Fletcher had minimal knowledge and experience regarding VFDs, (3) Lee was completely in charge of the VFD repair work, and (4) Lee appeared to acquiesce in Fletcher's proposal to tap the fan blade with his screwdriver. Lee challenges the fourth fact. But the evidence that Willis and Fletcher submitted – that we must assume is true for summary judgment purposes – shows that after Fletcher proposed tapping the fan blade, Lee did not disagree and in fact continued shining his flashlight on the fan for the next 15 seconds. This evidence gives rise to a reasonable inference that Lee agreed with Fletcher's proposed course of action. Lee's agreement in turn gives rise to a reasonable inference that Lee believed Fletcher's course of action was safe.

17

The Supreme Court in *System Tank Lines, Inc. v. Dixon* suggested that a person may not be negligent if another person with more expertise represents that the first person could perform a particular act safely. 47 Wn.2d 147, 152, 286 P.2d 704 (1955). The court stated that whether the first person's otherwise negligent act was reasonable in light of such a representation is a question of fact. *Id.* I do not necessarily advocate adopting a rule that an expert's acquiescence in the defendant's conduct *always* creates a question of fact regarding the defendant's negligence. However, under the specific circumstances in this case I believe that Lee's expertise, Fletcher's lack of expertise, Lee's control over the repair work, and Lee's acquiescence in Fletcher's proposed course of conduct creates a question of fact regarding whether Fletcher's conduct was reasonable *under the circumstances* of this incident.

The evidence of negligence against Fletcher certainly is strong. After considering evidence regarding the circumstances surrounding the incident, a jury may well have found that Fletcher was negligent. But that was a decision for the jury to make, not for the trial court to make on summary judgment.

_____, A.C.J.
MAXA, A.C.J.

18