[No. 38519.   Department Two.   June 1, 1967.]

PERCY MINIKEN et al., *Respondents,* v. FRANK B. CARR
*et al., Appellants.**

*Paul D. Hansen* (of *Anderson & Hunter*), for appellants.

*D. Van Fredenberg* (of *Monheimer, Schermer, Van Fre-denberg & Smith*), for respondents.

LANGSDORF, J.†—This is an appeal from a jury verdict favoring plaintiffs Miniken in their action for damages arising from the negligence of defendants Carr. For the sake of convenience, Mrs. Miniken will be considered the sole respondent and Mr. Carr the sole appellant.

Mrs. Miniken, a 57-year-old woman, was seriously in-

*Reported in 428 P.2d 716.

†Judge Langsdorf is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

jured when she fell down the basement stairs in Mr. Carr's law office in Snohomish, Washington. The accident came about in the following manner.

Mr. and Mrs. Miniken were in the process of buying property from clients of Mr. Carr. They were required to sign some closing papers, and for the convenience of all parties it was arranged that they would gather in Mr. Carr's office the morning of Saturday, September 14, 1963. The Minikens arrived at the office about noon and entered the reception room. Mr. Carr, who was busy in his office with two other gentlemen, came out to greet the Minikens and told them the vendors had not yet arrived. No other employees were present.

Some time later, Mr. Miniken stepped into the hall leading off the reception room, knocked on Mr. Carr's office door and asked if he might use the restroom. Carr assented, leading him down the hallway and then to the left, into a shorter hall or alcove. He reached in front of Mr. Miniken to turn on the restroom light switch and opened the restroom door, also in the left wall of the alcove. Mr. Carr then returned to his office.

Upon Mr. Miniken's return to the reception room, his wife asked the location of the restroom. He is variously reported to have said, "Down the hall and to your left," or "the first door on your left." In any event, Mrs. Miniken went down the hall, turned left and opened the door in the end of the alcove rather than the one immediately adjacent, in the left wall. The door she opened led to the basement, and she was immediately catapulted down the stairs.

Testimony and pictures admitted at trial show the two doors are at right angles to each other and immediately adjacent, the frames of each butted together in the corner of the alcove. Both doors are alike; neither is marked or labeled. The restroom door opens outward from the left, the basement door inward from the right. There was no sill or lip inside the basement door and the stairs dropped off steeply and turned to the right. The basement light switch was inside the descending stairwell.

Mr. Carr heard the commotion caused by the fall, came out of his office and discovered Mrs. Miniken at the bottom of the stairs. He summoned her husband. During this time he was reported to have said he was afraid something of this nature would occur and that was why he escorted people to the restroom.

Appellant operated a 2-man law firm. The building was one story, of concrete construction. It had previously been a telephone office. Besides the reception room and Mr. Carr's office, it consisted of a second office and a library, both opening off the main hall. At trial appellant stated that the restroom was considered private and that he expected people to ask to use it. He also stated no one had ever been refused its use.

Appellant's primary contention is that respondent was no more than a licensee at the time she was injured, so that he owed her only the duty not to wantonly or willfully injure her. He contends he did not owe her reasonable care for her safety—the duty owed a business invitee. Respondent, on the other hand, urges that all distinctions between invitees and licensees be abandoned, making reasonable care due each in all circumstances.

It is true that it is not always helpful to determine duty owed entrants on land by traditional restrictive legal application of these "ancient categories." *Mills v. Orcas Power & Light Co.*, 56 Wn.2d 807, 821, 355 P.2d 781 (1960), but we have not, as respondent urges, abandoned them. In the recent case of *McKinnon v. Washington Fed. Sav. & Loan Ass'n*, 68 Wn.2d 644, 414 P.2d 773 (1966), we adopted a more flexible test for determining whether entrants on land were business invitees. Implicit in that decision was a determination that the distinctions maintain their vitality.

Considering the facts of this case, we think a jury could find that Mrs. Miniken was an invitee at the time she was injured and was thus owed a duty of reasonable care for her safety. Appellant does not contest her status as such when she entered the building or for the purpose of transacting the business for which she and her husband had

come. It might well be determined that she remained an invitee during her trip to the restroom.

■ The precise scope of a business invitation is always a difficult one. Essentially it depends upon what the invitee is to do upon the premises, as well as what the occupier "encourages" the visitor to do. Prosser, Torts, § 61 (3d ed.) at 394. But it also depends on where the invitee may be reasonably foreseen to go, and where the occupier *expects* him to go. It may be that the express permission given Mr. Miniken constituted active "encouragement" to his wife. Moreover, the fact that use of the restroom had never been refused can be taken to show appellant *expected* visitors to use it. It may even be that operation of a detached business building requires some provision of lavatory facilities be made for business visitors.

■ But it is not necessary to rest our determination on the invitee-licensee distinction alone. Even a licensee may be owed a duty by an occupier to warn him of concealed, dangerous conditions of which the occupier has knowledge, and of which the licensee does not know. That such a duty might exist was recognized as early as in *Christensen v. Weyerhaeuser Timber Co.*, 16 Wn.2d 424, 432, 133 P.2d 797 (1943), where, after stating the general rule of wanton or willful conduct as to licensees, we said "The rule as thus expressed does not exclude liability on the part of the owner or proprietor for extraordinary concealed perils against which the licensee cannot protect himself, or for unreasonable risks incident to the possessor's activities." In *McNamara v. Hall*, 38 Wn.2d 864, 233 P.2d 852 (1951), this rule concerning dangerous conditions on the premises was recognized, but it was there determined the occupier himself had no knowledge of the danger involved.

In the more recent case of *Potts v. Amis*, 62 Wn.2d 777, 384 P.2d 825 (1963), we quoted favorably from *Christensen v. Weyerhaeuser Timber Co.*, *supra*, as well as from text treatments and the first Restatement, Torts. The current Restatement, Torts sets out the following criteria:

Dangerous Conditions Known to Possessor
A possessor of land is subject to liability for physical

harm caused to licensees by a condition on the land if, but only if,

(a) the possessor knows or has reason to know of the condition and should realize that it involves an ureasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

(c) the licensees do not know or have reason to know of the condition and the risk involved. Restatement (Second), Torts § 342

It is to be noted that with respect to a licensee, the possessor does not have the duty to *discover* the danger, but that if he does learn of it, the condition must either be repaired or warning given.

■ It is undisputed that appellant had knowledge of the condition, and his conduct makes it clear he fully appreciated the danger it presented. Mrs. Miniken neither knew of this trap nor could she be reasonably expected to discover it. We hold that where there are two doors, identical and unmarked, with a grave danger of serious injury should the wrong one be chosen, and the possessor knows or should know of the danger, but the entrant does not and should not know, there is a trap, the existence of which appellant here had a duty to make known to respondent, whether she was a licensee or invitee. Appellant's failure to warn her constituted a breach of that duty.

We next turn to the application of these theories in the trial court. Appellant says the instructions incorrectly stated the applicable law. With respect to an occupier's duty he complains only of the giving of instruction No. 7, which says:

You are instructed that the defendant owed to the plaintiff reasonable care to protect her from injury on his premises. In determining what reasonable care should be under the then existing circumstances, you should consider:

The nature, use and arrangement of the premises.

The customary use of the restroom.

The purpose of plaintiff's visit to the premises.

The implied permission or lack thereof for plaintiff to use the restroom.

The location and design of the restroom and basement doors.

The construction and lighting of the stairs.

Together with all other surrounding circumstances as described by the evidence produced in this case.

As appellant offered no alternate instruction, we presume he believes the law is adequately stated by the only other instruction dealing with the duty owed by an occupier. This was instruction No. 8, which becomes the law of the case, and which says:

The duty of an attorney in the maintenance of an office which is open to the public is to use ordinary care to make the premises reasonably safe for clients. This duty is limited to that part of the premises designed, adapted and prepared for the accommodation of clients, or to which clients may reasonably be expected to go.

The jury was also given the usual direction to consider the instructions as a whole and not to attach any significance to their order. We do the same. Thus the only question then is whether the law set out by instruction No. 8 is so altered by the addition of instruction No. 7 as to make them, taken together as a unit, an incorrect statement of the law. We do not believe that it is.

With respect to Mrs. Miniken's status as a business invitee, it seems clear that the addition of No. 7 does not destroy the effect of No. 8. The former is concerned with the standard of care, and the latter with the territorial extent of that care. Only if the jury completely ignored the second instruction would appellant's argument have merit. There is no indication that it did so. While the two may be somewhat overlapping, they are not prejudicial. Certainly appellant is in no position to complain of precision of definition, as he himself presented no instruction even setting out the licensee-invitee distinction.

There is even less doubt concerning the hidden danger theory. The addition of No. 7 is more favorable to appel-

lant, if anything, for it leads the jury to consider the danger and obviousness of the injury-causing condition. Thus under either interpretation the instructions given were adequate to permit the jury to find a breach of duty owed Mrs. Miniken.

Appellant also complains of the trial court's refusal to give his proposed instruction concerning negligence of the husband imputable to the wife. Only the very last sentence of the instruction mentions the theory; it is entirely unrelated to the rest of the instruction. Nor has he supported its applicability. In any event, there is no evidence that Mr. Miniken could or should have known of the hidden danger. The point is not well taken.

The judgment is affirmed.

DONWORTH, WEAVER, and ROSELLINI, JJ., concur.

FINLEY, C. J., concurs in the result.