IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| REBECCA FOWLER, an individual, | No. 51366-8-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| BRENT SWIFT, in his individual capacity; ROSANNE FINN, a single individual, | |
| Respondents, | |
| And | |
| SCOTT BERGFORD and PATRICIA BERGFORD, and the marital community comprised thereof; JENNIFER NEVY, in her individual capacity, | |
| Defendants. | |

GLASGOW, J. — Brent Swift rented a room on the second floor of a house where he ran his acupuncturist's office. Three additional business tenants rented other rooms in the house. One tenant typically collected the monthly rent from the other tenants and sent it to the building's owners. Roseanne Finn was the sole named tenant on an expired written lease for the building, but Finn had moved her business elsewhere.

Rebecca Fowler, Swift's patient, slipped and fell down the interior stairs outside Swift's office, breaking her tibia and fibula. She sued Swift and Finn for damages related to her injuries, in addition to other defendants including the building's owners.

The trial court granted summary judgment for both Swift and Finn, reasoning that neither owed a duty to Fowler with respect to the stairs, which were in a common area.

Fowler appeals, arguing that a genuine issue of material fact remained as to whether Swift and Finn owed her a duty as to the stairs, as well as whether Swift had breached his duty. She reasons that Swift was a possessor of the stairs and so he owed a duty of care to invitees who used them, while Finn owed her a duty as a sublandlord of the property.

We conclude that neither Swift nor Finn owed a duty to Fowler with regard to the stairs, and therefore we affirm. We also deny Fowler's request for attorney fees on appeal.

FACTS

The relevant underlying facts are not in dispute. Scott and Patricia Bergford leased a historic home in Olympia to Finn in 2012. Finn began using the building to operate her business, as did two other tenants who were not named in the lease, including Jennifer Nevy. The lease agreement expired in November 2013 and converted to a month-to-month tenancy. In February 2014, Finn moved out, giving Nevy the responsibility for the premises and the tenants' payment of rent. Nevy then sublet offices in the building to three other professionals, including Swift, an acupuncturist. None of the four tenants had a written lease. Nevy assumed the responsibility of paying the full rent to the Bergfords, with each of the other tenants first paying their share to her. At some point, Swift's rent increased $30 per month to cover the cost of paying a person to clean the common areas.

Fowler, who suffers from multiple sclerosis, had been a patient of Swift's for over 10 years prior to him moving his office to this new location. Among her symptoms were numbness and loss of circulation in her feet, which often required her to wear wool socks for warmth. Swift knew about her condition and its effects.

2

Before visiting Swift's new office for the first time, Fowler learned from her sister, another patient of Swift's, that the tenants of the building and their clients typically removed their shoes upon entering the building. Fowler's sister also told her that it was customary for clients to leave their shoes by the bench at the bottom of the stairs, where Swift would meet his patients and escort them upstairs to his office on the second floor. Swift was one of two tenants with offices on the second floor. The stairs were hardwood, and at the time, they did not have any slip-resistant material on them. The stairs and handrail may not have met building code standards according to the testimony of Fowler's expert, and Swift admitted that he thought the stairs were narrower than normal.

In November 2014, Fowler visited Swift's new office for the first time for an appointment. When Fowler arrived, she saw Swift and his previous patient walk down the stairs in their socks. She then removed her shoes but kept her socks on and followed Swift upstairs for her appointment. Following the appointment, Fowler walked down the stairs by herself. She was half-way down the stairs when she slipped and fell, breaking her tibia and fibula. After the accident, the tenants decided together to place signs at the top of the stairs warning that the stairs were narrow and asking people to keep their shoes on, as well as to install slip-resistant treads on each step.

Fowler brought a personal injury lawsuit, naming Swift, Finn, and the Bergfords as defendants. Fowler later added Nevy as an additional defendant. Nevy and the Bergfords have since been dismissed as parties. Both Swift and Finn moved for summary judgment on the grounds that they did not owe a duty to Fowler with respect to the stairs.

In his declaration, Swift stated that he rented only his office from Nevy and that he was not responsible for any other area of the house. He explained that the downstairs shoe rack was

3

intended for use by clients of the downstairs tenants and that he set up a separate area outside his office upstairs for his clients to remove their shoes. He claimed that he never told his clients to remove their shoes downstairs but rather asked them to remove their shoes before entering his office. On the day of the accident, Swift neither asked Fowler to remove her shoes before entering his office nor stopped her from removing her shoes at the bottom of the stairs.

In her declaration, Finn stated that during the time that she had an office in the building, she had no right to make physical alterations or repairs to any fixtures because that was the Bergfords' responsibility as owners. She also stated that once she moved out, she believed she had no right to enter the property without Nevy's approval. Nevy stated in her declaration that there was no building-wide "shoes off" policy; each tenant and client was free to do what they wished. Clerk's Papers (CP) at 314.

Gary Sloan, a forensic human factors specialist, was retained by Fowler to assess the slip resistance of the stairs. Using socks similar to those Fowler wore the day of the accident, Sloan conducted trials and concluded that with socks, the slip index was "at least as slippery as ice." CP at 206. He also concluded that the "shape and dimensions of the handrail in combination with the relatively short runs were additional risk factors." CP at 207. In Sloan's opinion, Fowler "would not have slipped on the stairs and been injured had she been wearing shoes rather than only socks." CP at 207.

Swift also submitted evidence, going back more than a decade, that none of the previous tenants or the Bergfords knew of anyone else ever slipping or falling down the stairs. No one had reported any concerns about the safety of the stairs during the years the Bergfords owned the house.

The trial court granted summary judgment in favor of both Swift and Finn. Fowler appeals.

4

No. 51366-8-II

## ANALYSIS

### I. SUMMARY JUDGMENT STANDARD OF REVIEW

In reviewing a grant of summary judgment, we apply the same standard as the trial court: summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); *DeVeny v. Hadaller*, 139 Wn. App. 605, 616, 161 P.3d 1059 (2007). We consider the evidence and the reasonable inferences therefrom in the light most favorable to the nonmoving party. *Sutton v. Tacoma Sch. Dist. No. 10*, 180 Wn. App. 859, 864, 324 P.3d 763 (2014). We review the trial court's conclusions of law de novo. *DeVeny*, 139 Wn. App. at 616.

The moving party bears the burden of first showing that there is no genuine issue of material fact. *State v. Grocery Mfrs. Ass'n*, 5 Wn. App. 2d 169, 185, 425 P.3d 927 (2018), *review granted*, 193 Wn.2d 1001 (2019). Once the moving party has made such a showing, the burden shifts to the nonmoving party to set forth specific facts that rebut the moving party's contentions and show a genuine issue of material fact. *Zonnebloem, LLC v. Blue Bay Holdings, LLC*, 200 Wn. App. 178, 183, 401 P.3d 468 (2017). Responses by an adverse party to a motion for summary judgment must be made on personal knowledge, must set forth facts that would be admissible in evidence, and must show affirmatively that the declarant of such facts is competent to testify to the matters stated therein. *Lane v. Harborview Med. Ctr.*, 154 Wn. App. 279, 286, 227 P.3d 297 (2010).

A genuine issue of material fact exists if the evidence would be sufficient for a reasonable jury to find in favor of the nonmoving party. *Zonnebloem*, 200 Wn. App. at 182-83. But where

5

reasonable minds could reach only one conclusion from the admissible facts in evidence, that issue may be determined on summary judgment. *Sutton*, 180 Wn. App. at 865.

## II. SUMMARY JUDGMENT AS TO SWIFT

In an action for negligence, a plaintiff must prove four basic elements: duty, breach, injury, and proximate cause. *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 48, 914 P.2d 728 (1996). Fowler argues that the trial court improperly granted summary judgment with respect to Swift because there were issues of material fact as to whether Swift owed her a duty as a possessor of the stairs and whether he breached that duty in failing to maintain them or warn her of any danger. We hold that summary judgment was properly granted to Swift because he did not owe Fowler a duty with respect to the stairs.

### A.      Swift Did Not Owe a Duty to Fowler Regarding the Stairs

The threshold determination of whether a duty exists is a question of law. *Coleman v. Hoffman*, 115 Wn. App. 853, 858, 64 P.3d 65 (2003). Under premises liability, a possessor of property has a duty "to exercise reasonable care to protect an invitee against a condition that creates an unreasonable risk of harm, including inspecting for said conditions, 'followed by such repair, safeguards, or warning as may be reasonably necessary for [the invitee's] protection under the circumstances.'" *Adamson v. Port of Bellingham*, 193 Wn.2d 178, 188, 438 P.3d 522 (2019) (quoting RESTATEMENT (SECOND) OF TORTS § 343, cmt. b). "The possessor is not liable for a condition of the land that is known or obvious to the invitee, unless the possessor 'should anticipate the harm despite such knowledge or obviousness.'" *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 343A).

To determine who has the duties described above, "the test in a premises liability action is whether one is a 'possessor' of [the] property, not whether someone is a 'true owner' (the titleholder) of property." *Gildon v. Simon Prop. Grp., Inc.*, 158 Wn.2d 483, 496, 145 P.3d 1196 (2006) (quoting *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 127-28, 875 P.2d 621 (1994)). A possessor of land is a person who is "'in occupation of the land with intent to control it.'" *Coleman*, 115 Wn. App. at 860 (quoting *Ingersoll v. DeBartolo, Inc.*, 123 Wn.2d 649, 655, 869 P.2d 1014 (1994)). A person is in control of the land "'if that person has the authority and ability to take precautions to reduce the risk of harm to entrants on the land.'" *Adamson*, 193 Wn.2d at 187 (quoting RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL AND EMOTIONAL HARM § 49 cmt. c). Control over certain areas may be shared. *Id*.

Where an owner divides their premises and rents certain parts to various tenants, while reserving other parts such as entrances and walkways for the common use of all tenants, it is the landlord's duty to exercise reasonable care and maintain those common areas in a safe condition unless otherwise specified in the lease. *Minahan v. W. Wash. Fair Ass'n*, 117 Wn. App. 881, 891, 73 P.3d 1019 (2003); *see also Adamson*, 193 Wn.2d at 187. We typically look to the specific terms of the rental or lease agreement to see who had authority and ability to reduce risk of harm and whether there were temporal and practical limits on the lessee's possession such that the lessor is still liable as a possessor of land. *Adamson*, 193 Wn.2d at 187. Here, Swift did not have any written lease agreement imposing on him a duty to maintain common areas.

Fowler argues that the question of whether an entity is a "possessor" is a factual determination for the trier of fact, and so summary judgment should be reversed, citing *Coleman* and *Mesa v. Spokane World Exposition*, 18 Wn. App. 609, 613, 570 P.2d 157 (1977). Br. of

Appellant at 10.  But *Coleman* did not make this statement as a general rule, but rather reversed summary judgment because under the specific facts of that case there was a genuine dispute as to the degree of control the defendants had over an apartment complex.  115 Wn. App. at 862-63.  And though *Mesa* stated generally that the question of control over premises is a factual matter, 18 Wn. App. at 613, that does not mean that whether a party is the possessor of the premises can never be determined on summary judgment.  If there is no *genuine dispute* that Swift was not a possessor of the stairs, then summary judgment is appropriate.  And the existence of a duty is a legal question.  *Coleman*, 115 Wn. App. at 858.

1.  Swift was not a possessor of the stairs

The main issue here then is whether Swift was a "possessor" of the stairs, specifically whether he was in occupation of the stairs with intent to control them.  We hold he was not.

Fowler first contends that the trial court erroneously ruled as a matter of law "that *only* the property owner or the landlord could owe a duty to protect invitees who used the stairs."  Br. of Appellant at 11 (emphasis in original).  But she does not cite to the record to support this broad claim; rather, the record shows that the trial court ruled more narrowly that under the facts of this case, Fowler did not establish a genuine issue of fact as to whether Swift possessed the stairs.

In *Coleman*, we held there remained an issue of material fact as to whether certain defendants had possession and control over an apartment complex despite not being the owners.  115 Wn. App. at 862-63.  We considered factors such as leasing, making repairs, paying bills, making management decisions, and responding to tenant complaints.  *Id*. at 862.  One defendant, Hoffman, made repairs and a managerial decision, while another defendant paid utility bills and

repair costs, collected rents, and hired Hoffman to perform repairs. *Id.* at 862. These actions demonstrated enough control over the relevant premises to raise a question of fact as to possession.

In *Gildon*, our Supreme Court recognized that even though a property management company was not the title owner of the property, a shopping mall, the company could be liable for injuries sustained by a cleaner while working on a common walkway, because the management company "possessed, maintained, and/or operated" that common walkway where the injury occurred. 158 Wn.2d at 497.

Here, Swift was the possessor of his upstairs office, but the stairway was a common area. As a result, Swift is a possessor of the stairway only if he maintained, operated, or otherwise exerted control over the stairway. *See id. at* 497.

Fowler claims Swift "exerted managerial decision-making power" over the stairs because he and the other tenants hired a cleaning person who cleaned the stairs and other common areas. Br. of Appellant at 11-12. She also claims that after the accident, Swift met with the other tenants to make the stairway safer by placing signs at the top of the stairs warning that they were narrow and asking people to keep their shoes on, as well as installing slip-resistant treads on each step. Although this evidence of subsequent remedial measures would be inadmissible to prove negligence, it may be admissible to show ownership or control over the stairs. ER 407.

The evidence in the record shows only that all the tenants paid a little extra in rent to offset the cost of the cleaning person. Nevy, one of the other tenants, collected the rent and hired the cleaning person. Moreover, evidence of "'minimal, neighborly maintenance,'" even when performed regularly over a long period of time, does not elevate a person's actions to that of control over a common or public space. *Coulson v. Huntsman Packaging Prods. Inc.*, 121 Wn. App. 941,

947-48, 92 P.3d 278 (2004) (quoting *Contreras v. Anderson*, 69 Cal. Rptr. 2d 69, 77 (1997)). In *Coulson*, the court reasoned such conduct did not manifest any intent by the defendant to control the space to the detriment or exclusion of the owner, in that case the City of Kent. *Id.* at 948. Under this logic, the fact that part of Swift's rent paid a cleaning person to maintain the common spaces did not make him a possessor of the stairs. Nor would the minimal changes made to promote safety after the accident make him a possessor.

Fowler also analogizes this case to *Miniken v. Carr*, 71 Wn.2d 325, 428 P.2d 716 (1967). There, the client of an attorney fell down stairs to a basement when she thought she was opening the door to the bathroom because the doors to each were adjacent and unmarked. *Id.* at 326. The court rejected the attorney's argument that his duty did not extend to the bathroom and the stairs to the basement. *Id.* at 329-30. But in that case it was undisputed that the attorney possessed the entire premises, whereas here there is no evidence to contradict Swift's statement that he was responsible only for his own office, while the stairs were part of the common area. *Miniken* does not support Fowler's argument that Swift possessed the stairs.

Fowler also contends that Swift is the possessor because, as a tenant on the second floor of the building, he "was in a special position of control over the staircase because he exerted control over its use." Br. of Appellant at 12. She notes that the only access to his office was up the stairs, and that at the bottom of the stairs was a bench beneath which clients would leave their shoes, and where Swift would meet clients to escort them upstairs.

But the presence of the bench at the bottom of the stairs does not show that Swift himself was in a special position of control over whether people wore shoes on the stairs. And in his declaration Swift stated that he did not require his clients to remove their shoes upon entering the

10

building, but rather he had set up a place for clients to remove their shoes just outside his office upstairs. Fowler does not contest this fact. Although Fowler understood it was customary for clients to remove their shoes upon entering the building, there is no evidence that Swift himself told her she had to; indeed it was Fowler's sister who told her about that practice. Moreover, the fact that Swift was not the only tenant with an office on the second floor undercuts Fowler's argument that he had some degree of special control over the stairs.

In sum, the parties do not dispute the facts, only whether the facts establish that Swift had possession and control over the stairs. We conclude that the undisputed evidence supports Swift's contention that he was not a possessor of the stairs. Although there is no written documentation of the details of Swift's rental agreement, Fowler presented no evidence refuting his statement that he was responsible only for his own office space under his informal rental agreement. The undisputed presence of a second upstairs tenant goes against Fowler's suggestion that Swift somehow had exclusive control over the stairs. And the evidence does not show that Swift had "managerial decision-making power" over the stairs. Even taking the evidence in the light most favorable to Fowler, we conclude that Swift did not possess the stairs.

2. Swift did not assume a duty of care toward Fowler with respect to the stairs

Fowler also claims that Swift assumed a duty of care toward her because he "actively encouraged her to traverse the stairs in her stocking feet, despite her medical condition," which gave her "an assurance that it was safe to do so." Br. of Appellant at 15. She cites *Alston v. Blythe*, 88 Wn. App. 26, 36, 943 P.2d 692 (1997), where a driver who waved a pedestrian to cross in front

11

of his truck was held to have assumed a duty to use reasonable care to ensure the pedestrian was safe to do so.

But unlike *Alston*, the undisputed evidence here does not show that Swift affirmatively assured Fowler that it was safe to use the stairs wearing only socks. As noted above, there is no evidence that Swift told Fowler to remove her shoes upon entering the building. Fowler's understanding of this practice came from her sister. Rather, the evidence shows that Swift only required his patients to remove their shoes upon entering his office. The fact that Swift saw Fowler remove her shoes and came down the stairs to greet her in only his socks does not amount to an "assurance" of safety, because silence and inaction do not give rise to an implied assurance of safety. *Lee v. Willis Enters., Inc.*, 194 Wn. App. 394, 404, 377 P.3d 244 (2016). Therefore, Swift did not assume a duty toward Fowler over the stairs.

> 3. Whether Swift was in a special position to know about the dangers of the stairs does not affect the outcome

Finally, Fowler argues that Swift was in a special position to know the dangers of the stairs because he knew they were narrower than most stairs and he was aware that many of his patients, including Fowler, suffered from medical conditions that increased the risk of a fall. She reasons that a possessor must take reasonable care to make the premises safe for the invitee's "'use for the purposes of the invitation.'" Reply Br. of Appellant at 7-8 (emphasis omitted) (quoting RESTATEMENT (SECOND) OF TORTS § 343, cmt. b). Because the purpose of the invitation here was to treat a patient suffering from multiple sclerosis, Fowler argues, Swift owed a duty to make sure the premises were safe for such an invitee.

But the issue is not whether Swift owes a duty to invitees to make his premises safe for the purpose of the invitation (he does), but rather whether the stairs were a part of the premises for which Swift owed such a duty. Swift may have owed a duty to Fowler to make his office safe for the purposes of her visit, but as discussed above, the stairs were not in Swift's possession and so were not part of his premises for which he owed a duty of care.

We hold that because Swift was not the possessor of the stairs, he did not owe a duty toward Fowler with respect to the stairs. There is no evidence to refute his contention that his informal rental agreement covered only his office space. The evidence of his decision-making authority within the building, even taken in the light most favorable to Fowler, does not establish a genuine issue of material fact as to whether he possessed the stairs. Nor does the undisputed evidence suggest that Swift somehow assumed a duty of care toward Fowler with respect to the stairs. The trial court properly granted summary judgment to Swift.[1]

### III. SUMMARY JUDGMENT AS TO FINN

Fowler argues summary judgment was improper with respect to Finn because, as a sublandlord, she had a duty to ensure the safety of the common areas of the premises. We disagree and conclude that Finn did not have a duty to ensure the safety of the stairs.

"When a tenant absolutely assigns [their] rights to an assignee and thus no longer possesses the premises, a court has no jurisdiction over that tenant." *Bellevue Square Managers, Inc. v. GRS Clothing, Inc.*, 124 Wn. App. 238, 243, 98 P.3d 498 (2004). It is undisputed that Finn's lease

---

[1] Because Swift did not owe a duty with respect to the stairs, we need not consider Fowler's argument that he breached his duty.

agreement had converted to a month-to-month tenancy, that she assigned all her rights and responsibilities to Nevy, and she moved out of the building several months before the accident.

Fowler argues Finn did not produce any evidence of a formal assignment, so even though she verbally agreed to have Nevy take over her lease responsibilities, she remained "a sublessor with an active lease on the property." Br. of Appellant at 17. But it is undisputed that Finn no longer used any part of the premises and had no remaining obligations under the written lease agreement, which had expired. A possessor of land is one who is "'in occupation of the land with intent to control it.'" *Coleman*, 115 Wn. App. at 860 (quoting *Ingersoll*, 123 Wn.2d at 655). Finn clearly did not occupy the premises when Fowler fell, and Fowler presents no evidence that Finn manifested any intent to control the premises after she moved out. In fact, Finn stated in her declaration that she believed she had no right to enter the premises without Nevy's permission.

Although a landlord has a duty to exercise reasonable care to keep common areas safe from hazards, *Geise v. Lee*, 84 Wn.2d 866, 871, 529 P.2d 1054 (1975), Fowler does not explain how Finn's informal assignment of her month-to-month tenancy to Nevy somehow converted her to a "sublandlord" of the premises. Br. of Appellant at 16. The Bergfords remained the landlords of the property, and Finn did not pay any rent money to the Bergfords or receive money from any other tenant after she moved out in February 2014. Fowler argues that, because Finn's assignment or lease agreement with Nevy was verbal and informal and without documentary proof, and because Finn remains the only party named in the lease, there remains a disputed issue of fact as to whether Finn remains the primary lessee of the property and so the possessor of the premises.

But as Fowler herself contends, whether a person is a possessor depends on the specific facts of the case and is not strictly determined by the parties' formal landlord-tenant relationships. *See Coleman*, 115 Wn. App. at 859-60. As discussed above, there is no evidence that Finn occupied the premises with intent to control them in the months before the accident, and she was not a possessor of the stairs when the accident occurred. And it is undisputed that Finn's original rental agreement had expired and Finn was under no continuing lease obligations.

Fowler also claims that Finn "began the practice of tenants removing their shoes." Br. of Appellant at 18. But the record shows that Finn merely stated that she and the other tenants typically did not wear shoes, but she never asked her clients to remove their shoes. Furthermore, whether or not Finn created such a practice in the past is irrelevant to whether she continued to have any control over the practice at the time of Fowler's accident, eight months after Finn had left the property.

We hold that Finn did not owe a duty to Fowler because she was not a possessor of the stairs at the time of the accident. Therefore, the trial court did not err in granting summary judgment with respect to Finn.

## ATTORNEY FEES

Fowler requests attorney fees associated with her appeal without citation to authority. We reject her request for attorney fees on appeal.

In sum, we affirm the trial court's grant of summary judgment and deny Fowler attorney

No. 51366-8-II

fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Melnick, P.J.

Sutton, J.